BANK OF CHICAGO/LAKESHORE, formerly known as Bank of Chicago, an Illinois Banking Corporation, Plaintiff,

v.

Arthur E. MENALDI and Spyridon Diogenes, Defendants.

No. 91 C 2039.

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1992.

Paul Thaddeus Fox, James Wilson Marks, Holleb & Coff, Chicago, IL, for plaintiff.

Ward Lauris Zielinski, Edward A. Cohen, Block, Levy & Associates, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Bank of Chicago/Lakeshore ("BOC") brings this action to collect the balance due on a promissory note made by defendants Arthur E. Menaldi ("Menaldi") and Spyridon Diogenes ("Diogenes") in favor of BOC. Diogenes has moved for summary judgment and Menaldi seeks to dismiss the action.[1] Both defendants claim that this action is barred by res judicata because judgment has already been entered against defendants in favor of BOC. BOC moves for a default judgment against the defendants and for sanctions. For the reasons set forth below, we deny defendants' motions, deny plaintiff's motion for default judgment, and impose sanctions on both defendants.

## I. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Moreover, we must view the record and all possible inferences in the light most favorable to the non-moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); Williams v. Williams Electronics, Inc., 856 F.2d 920, 922 (7th Cir. 1988). Summary judgment should be denied "where there is reason to believe that the better course would be to proceed to a full trial." Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

## II. Factual Background

On May 13, 1982, Menaldi and Diogenes, as individuals and as President and Secretary, respectively, of Ektafax Corporation, executed a term note ("Note") in the amount of $1,118,925.74 in favor of BOC. The Note became due on November 1, 1982. As collateral for the Note, defendants pledged numerous assets including several junior mortgages evidenced by various trust deeds.

Defendants defaulted on the Note, as well as on their obligations to other lenders. As a result of their defaults, foreclosure actions were brought against defendants in at least four separate lawsuits. Several mechanics liens were also filed against properties used to collateralize defendants' Note to BOC. The cases include Lakeview Trust and Savings Bank v. Menaldi, et al., Case No. 82 CH 1118 ("Lakeview"), Branigar v. Menaldi, et al., Case No. 82 CH 72 ("Branigar"), Banks v. Menaldi, 82 CH 3534 ("Banks"), and Marina Bank v. Menaldi, et al., 82 CH 670 ("Marina Bank").

### A. The Lakeview Case

One of the junior mortgages used to secure the Note was on Unit 3, 929 West Ainslie

---

1. Because Menaldi has already filed an answer in this case, we will treat his motion to dismiss as a motion for summary judgment.

Road in Chicago, Illinois, a condominium owned by Menaldi. Due to its interest in the condominium, BOC was named as a defendant in the *Lakeview* foreclosure action. At issue in *Lakeview* was property held in trust by LaSalle National Bank for the benefit of Menaldi and Diogenes. In the course of the case, BOC filed a counterclaim against Menaldi and Diogenes seeking, among other things, a personal deficiency judgment against Ektafax, Menaldi, and Diogenes separately and jointly. On March 1, 1983, Judge Reginald J. Holzer entered an order in which he denied a motion to dismiss BOC's counterclaim. Subsequently, on May 21, 1983, Judge Holzer entered a judgment of foreclosure and sale of the property held in trust by LaSalle National Bank for the benefit of Menaldi and Diogenes in favor of Lakeview.

Neither the March 1, 1983 order, or the foreclosure order mentioned BOC's counterclaim. Instead, the docket for 82 CH 1118 reveals that motions continued to be heard in the case, and that as late as October, 1984, BOC was granted leave to substitute attorneys in the action. The record, although not the docket,[2] also reflects that in January, 1984, BOC moved to consolidate the *Lakeview* case with the *Banks* case. In this motion, BOC stated that "[t]he only remaining portion of [*Lakeview*] which is pending and undetermined is the claim for deficiency judgment of [BOC] against [Menaldi] and [Diogenes]." Diogenes' Reply at Exh. 8. BOC went on to observe that "[a]ll other relevant and meaningful matters in this cause have been adjudicated, the first mortgage of [Lake View Trust] has been foreclosed, and the property foreclosed and sold pursuant to Sheriff's Sale," and contended that "[t]here remains nothing further for disposition by this Court except the prove-up of

the deficiency claim of [BOC] against [Menaldi] and [Diogenes]." *Id.* BOC explained that the *Banks* case "is also between the same parties, involves the same issues, and is based upon the same transaction," and then asks the court to "transfer the remaining portion of [the *Lakeview* case], which consists of the Complaint of [BOC] against [Menaldi] and [Diogenes] for deficiency judgment to the Chief Justice for consolidation and reassignment to the Honorable Judge Francis X. Golniewicz of the Land Title Division for prove-up." *Id.* It is not clear whether the motion to consolidate was granted.

### B. The *Banks* Case

In the *Banks* case, it appears that BOC filed a counterclaim against Menaldi and Diogenes.[3] Its claim against the defendants in the *Banks* case was the same as its claim in the *Lakeview* case.[4] BOC's claim against Menaldi in the *Banks* case was set for prove up on January 24, 1984. Diogenes' Reply at Exh. 9. However, there is nothing in the record to indicate whether judgment had been entered against the defendants prior to the prove up, whether the prove up took place as scheduled, and, if so, what transpired. The only remaining information on the *Banks* case is that it was transferred at some point and ultimately dismissed for want of prosecution on March 24, 1986 by Judge George Marovich, then sitting on the Circuit Court of Cook County.

### C. The *Branigar* Case

In *Branigar*, the court, in its Judgment of Foreclosure and Sale, stated that there was a valid second lien in favor of the Trust which secured the Note, and that there was due and owing BOC not less that $527,270.34.[5]

---

2. The docket for the *Lakeview* case is handwritten and, in parts, illegible. There does not appear to be any reference to a motion to consolidate.

3. Although neither party has submitted a copy of the counterclaim, it is reasonable to assume that such a counterclaim was filed in light of the fact that the *Banks* court set a date for prove-up of BOC's claim.

4. As noted above, in its motion to consolidate the *Lakeview* and the *Banks* actions, BOC states that

the two claims involve the same parties, the same issues, and the same transaction. *See* Diogenes' Reply at Exh. 8, ¶ 5.

BOC's claim in the *Lakeview* case, in turn, involves the same Note at issue here.

5. The amount of the beneficial interest was $527,570.34 rather than $1,118,925.74 because BOC conducted a UCC foreclosure sale upon some of the collateral pledged as security for the Note and successfully bid $500,000.00 in partial satisfaction of the debt. Diogenes' Motion for Summary Judgment at Exh. 3.

The court ruled that if Menaldi and Diogenes failed to pay amounts owed to Branigar and BOC, the property would be foreclosed. Subsequently, the property was sold at a public sale. There is no evidence that a personal deficiency judgment was entered against the defendants in BOC's favor.

### D.  The *Marina Bank* Case

In *Marina Bank*, the court entered a judgment of foreclosure in favor of the plaintiff. BOC was a co-defendant in this foreclosure action and was adjudicated to have a collateral assignment of the beneficial interest of the subject property which secured the Note in an amount not less than $527,570.34. There is no evidence that a personal deficiency judgment was entered in BOC's favor.

### III.  Discussion

### A.  Summary Judgment

Both Menaldi and Diogenes assert that BOC's claims on the Note are barred by *res judicata* because the bank already received a personal deficiency judgment against them in the *Lakeview* case. Alternatively, defendants argue that even if a personal deficiency judgment was never ordered in *Lakeview*, BOC's counterclaim is still pending in the Circuit Court of Cook County. Finally, Diogenes contends that *res judicata* applies because BOC obtained a judgment against the defendants in the *Banks* case. We will address each of these contentions in turn.

#### (i)  The *Lakeview* Case

■ Both defendants rely heavily on the disposition of *Lakeview* in contending that BOC is barred from bringing the present action. It is clear that BOC filed a counterclaim in the *Lakeview* case seeking a personal deficiency judgment against Menaldi and Diogenes. It is not clear, however, what became of that counterclaim. If the court awarded BOC a personal deficiency judgment, then BOC's claim here is, indeed, *res judicata*. In the alternative, if the counterclaim is still pending, then we have no jurisdiction over the present claim. However, if the counterclaim was dismissed without prejudice, then BOC's current claim is not barred by *res judicata*. Given the confusion surrounding the disposition of BOC's counterclaim in *Lakeview*, there remains a genuine

issue of material fact as to whether BOC's current claim is barred by *res judicata*, or whether this court lacks jurisdiction. This issue of fact precludes summary judgment.

#### (ii)  The *Banks* Case

Diogenes also raises the possibility that BOC's claim is barred by *res judicata* due to the disposition of the *Banks* case. Regardless of whether BOC's motion to consolidate its counterclaim in *Lakeview* with its claim in *Banks* was successful, Diogenes asserts that judgment was entered in *Banks* on the same Note at issue here. To support his contention, defendant offers an order issued in *Banks* stating that "[t]his cause is set for prove-up on the claim of Bank of Chicago on January 24, 1984." Diogenes' Reply at Exh. 9. Diogenes argues that the court would not have set BOC's claim for prove-up if it had not already entered a judgment in BOC's favor. Absent any tangible proof that any judgment was entered, however, and absent any evidence that the judgment involved the same matters and issues before this Court, there remains an issue regarding exactly what transpired in the *Banks* case. Accordingly, we cannot grant summary judgment.

Nor does the fact that the *Banks* case was dismissed for want of prosecution persuade us that BOC's current claim is barred by *res judicata*. Diogenes' Reply at Exh. 10. Although Diogenes invites us to infer from the dismissal, which occurred two years after the cause was set for prove-up, that BOC failed to prove up a judgment it had received against defendants, we decline to reach such a tenuous conclusion.

#### (iii)  *Branigar* and *Marina Bank* Cases

■ Although Menaldi mentions *Branigar* in his motion, he does not rely upon it in outlining why *res judicata* applies in this case. Instead, he simply asserts that

[s]ince the Bank of Chicago had knowledge of the previous judgments and also considered the judgments entered in the Marina Bank and Branigar case [sic] to be "res judicata" [sic] on the issues of the lien and the indebtedness due the Bank of Chicago on the Note, there is no justification for

the Bank bringing this instant action to collect on the exact same Note. Menaldi's Motion at pp. 4–5. However, Menaldi, either wilfully or ignorantly, fails to distinguish between judicial recognition in a foreclosure action that a party has a valid lien on a property and entry of a personal deficiency judgment. The former permits a party to receive proceeds from the public sale of a property, while the latter authorizes a party to seek payment from the debtor(s) himself. *See* Ill.Rev.Stat. ch. 110 ¶ 15–1504(e)–(f); Ill.Rev.Stat. ch. 110 ¶ 15–1506(i). In both *Branigar* and *Marina Bank*, just as in *Lakeview* and *Banks*, defendants fail to offer any evidence that BOC received a personal deficiency judgment against the defendants. Absent such evidence, we will not grant summary judgment against BOC.

### B. Default and Sanctions

■ BOC asks this Court to enter a default judgment against defendants and impose other sanctions because (1) defendants failed to participate in the preparation of the pretrial order as directed by this Court, (2) defendants' counsel misrepresented to the Court that they had just discovered "new" evidence which would bar BOC's claim as *res judicata* and excuse their failure to participate in the preparation of the pretrial order, and (3) defendants disregarded the Court's October 20, 1992 direction to file summary judgment motions based on the "new" evidence. BOC's Reply at pp. 1–2.

6. Although Elliot Wiczer, counsel for Diogenes, was the primary speaker at the hearing, Ward Zielinski, counsel for Menaldi, was present, had evidently seen the new evidence, expressed an interest in taking part in a motion to dismiss BOC's claim as *res judicata*, and ultimately did file a motion to dismiss on the day set by the Court. Accordingly, both defendants merit the same treatment here.

7. In the face of Mr. Wiczer's representations, this Court stated:
Okay. If you're that confident, I will let you file your motion in proper form, not as an appendage to. . . .
October 20, 1992 Hearing at p. 3.

8. BOC asserts that in fact defendants already had *Branigar* documents or, given that they were parties to the action, should have had the documents.

At bottom, all of these complaints revolve around the troubling allegation that defendants misrepresented themselves when they asserted that they had recently discovered new evidence that indicated that BOC had already received a judgment on the Note which would bar BOC's claim as *res judicata*.[6] In its hearing on October 20, 1992, we granted defendants leave to file a motion for summary judgment on the strength of Wiczer's assertion that newly-received evidence revealed that BOC had already obtained judgment on the Note.[7] The allegedly new evidence[8] involves a Decree for Foreclosure ("Decree") entered in the *Branigar* case.[9] However, the Decree clearly did not grant BOC a personal deficiency judgment in *Branigar*.[10]

Although BOC charges that Wiczer has misrepresented the source of the *Branigar* evidence, we are decidedly more concerned by the fact that the evidence itself, even if it was newly-received, clearly does not bar the present action, as it in no way reflects a personal judgment on the Note. In fact, as BOC points out, Diogenes himself, having asserted the dispositive nature of the evidence, fails to rely upon, or even make more than passing mention of, *Branigar* in his motion for summary judgment. In the Supplemental Statement of Facts attached to his Reply, Diogenes even concedes that "[t]he Bank of Chicago did not obtain a deficiency judgment upon the Note" in *Branigar*. *See* Supp.Stmt. of Facts at ¶ 11.

9. During the October 20, 1992 status hearing before this Court, Diogenes' counsel, in explaining his failure to prepare a pretrial order, asserted that "since discovery was closed [he had] obtained the documents from Jo Daviess County." Transcript of October 20, 1992 Proceedings at p. 2. *Branigar* is the only case which was adjudicated in Jo Daviess County.

10. The *Branigar* court ruled that a valid second lien existed on behalf of the Chicago Title and Trust Company as Trustee under a Trust Deed which secured the Note. The court further ordered that if the amounts due plaintiffs and BOC were not paid, the property at issue was to be sold and the proceeds distributed first to the plaintiff and then to BOC. There is no evidence suggesting that BOC received any money from the ensuing foreclosure sale.

Menaldi, too, fails to rely on *Branigar*. Like Diogenes, Menaldi mentions *Branigar*, and then relies almost exclusively on *Lakeview* for his claim that BOC's present action is barred by *res judicata*. Defendants have never alleged, however, that information in *Lakeview* was "new" evidence at the time of the October 20 hearing.

At the October 20 hearing, BOC informed the Court that it had reviewed Diogenes' motion, and that the order entered in *Branigar* did not dispose of the issue of a deficiency judgment between BOC and Diogenes. At the time, we stated that we would delay filing the pre-trial order, but that we would enter appropriate sanctions and cover BOC's costs if defendants' motions were not meritorious. Given defendants' failed motions and their specious new evidence, we now impose sanctions on both Diogenes and Menaldi and award attorneys' fees and costs incurred by BOC due to defendants' respective motions and the delayed filing of the pretrial order.[11]

## IV. Conclusion

For the foregoing reasons, we deny both defendants' motions for summary judgment and award plaintiff attorneys fees and costs incurred as a result of defendants' respective motions and the delay in filing the pretrial order. It is so ordered.

---

11. We will not enter a default judgment against   defendants at this time.