**In re William R. CRAWFORD, Debtor.**

**Bankruptcy No. 97 B 22063.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 21, 1997.

[black redaction blocks]

Ira T. Nevel, Chicago, IL, for First Nationwide.

Craig Phelps, Chicago, IL, for Standing Trustee.

Zalutsky & Pinsky, Ltd., Chicago, IL, for Debtor.

### MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

### INTRODUCTION

Chapter 13 of the bankruptcy code allows debtors to save their homes from imminent foreclosure by empowering them to cure defaults and reinstate their mortgages, even when it is too late to do so under state law. But when is it too late to reinstate a mortgage under chapter 13? Section 1322(c) of

the bankruptcy code says it is too late when the "residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law."[1] In this district, bankruptcy courts have held that if the chapter 13 petition is filed after a foreclosure sale, the debtor may not reinstate the mortgage. Two district court judges have disagreed. They held that the power to cure and reinstate is not cut off until the foreclosure sale is confirmed by the foreclosure court, because, they believed, that is when the sale is "complete."

▇▇▇ Contrary to those two district court opinions,[2] this Court again holds that a chapter 13 debtor has no power to cure defaults and reinstate a mortgage if the mortgaged property has been sold under a foreclosure judgement before the commencement of the chapter 13 case, even if that sale has not been confirmed. The reasons for this Court's firm conviction that the district courts were mistaken in their interpretations of both bankruptcy and Illinois foreclosure law and policy are detailed below.

### BACKGROUND

The Debtor, William R. Crawford, filed for protection under chapter 13 of the United States Bankruptcy Code, on July 21, 1997. Before that filing, First Nationwide Mortgage Corporation ("First Nationwide") filed a complaint in state court to foreclose its mortgage on the Debtor's principal residence. The Circuit Court of Cook County entered a Judgement of Foreclosure and Sale on March 27, 1997. On July 14, 1997, one week before the commencement of this chapter 13 case, the sheriff sold the property at a foreclosure sale. The sale was not confirmed before this case was filed.

Notwithstanding that sale, the Debtor listed First Nationwide as a creditor in his bankruptcy schedules and proposed to cure his prior mortgage arrears in his chapter 13 plan. First Nationwide did not object to the Debtor's proposed plan and this Court confirmed it on September 22, 1997. On October 20, 1997, however, First Nationwide moved to modify the automatic stay, contending that the Debtor lost the right to cure his mortgage arrears when the property was sold on July 14th. The Debtor, relying on district court authority, argued that he had not lost that right because the sale has not been confirmed. The Debtor also argued that First Nationwide was bound by the plan. On December 5, 1997, this Court granted First Nationwide's Motion for the reasons stated below.

### DISCUSSION

**The Power to Cure Mortgage Defaults is Not Available to Debtors Who Wait Until After the Foreclosure Sale to Seek Chapter 13 Relief.**

#### Chapter 13 grants debtors the power to cure defaults and reinstate mortgages.

A debtor's right to cure mortgage defaults through a chapter 13 plan is provided in § 1322(b):

> (b) ... the [chapter 13] plan may—
>
> ....
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default; [and]
>
> ....
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment

---

1. All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., unless otherwise indicated.

2. This Court is not bound by the district court decisions. *See Volpert v. Ellis (In re Volpert)*, 177 B.R. 81, 85 (Bankr.N.D.Ill.1995) ("Under the doctrine of stare decises, bankruptcy judges are not governed by decisions of individuals district judges in multi-judge districts in cases not before the bankruptcy judge."). *See also City of Olathe v. KAR Development Associates (In re KAR)*, 180 B.R. 629, 640 (D.Kan.1995) (collecting cases).

is due after the date on which the final payment under the plan is due. . . .

 As this Court explained in *In re Beaty*, 116 B.R. 112, 114 (Bankr.N.D.Ill.1990), under these provisions,

> even though a mortgage is in default, the mortgagee has accelerated the maturity date of the loan (meaning that it called the loan and demanded immediate payment of the entire balance) and the debtor has no right under non-bankruptcy law to cure the default, the debtor can do so in a Chapter 13 case. In *In Matter of Clark*, 738 F.2d 869, 874 (7th Cir.1984), the court concluded that the debtor's right to "cure" under section 1322(b)(5) permits a debtor to "de-accelerate" the payments due under a note secured by a residential property mortgage and reinstate the long term mortgage. The court held that "cure, as used in § 1322(b)(2) and (5), [means] to remedy or rectify the default" and "to restore matters to the way they were before the default." Id., at 872.

**Congress enacted § 1322(c) to codify decisions that the debtor's right to cure mortgage defaults and reinstate home mortgages could be exercised until the foreclosure sale.**

Before 1994, the Code did not expressly state when in the course of foreclosure proceedings it becomes too late for a debtor to invoke the cure and reinstatement powers provided in § 1322(b). The Seventh Circuit, looking to state law, held that a chapter 13 debtor's right to cure a default and reinstate a mortgage survived even if a foreclosure judgment had been entered before the commencement of the bankruptcy case. *Clark*, 738 F.2d 869, 874 (7th Cir.1984); *In re Josephs*, 93 B.R. 151, 155 (N.D.Ill.1988) (following *Clark* and holding, inter alia, that Illinois law is substantially similar to Wisconsin law). "[A] judgment adds nothing of consequence as far as § 1322(b) is concerned." *Clark*, 738 F.2d at 874.

Left open, however, was the question of when does something "of consequence as far

as § 1322(b) is concerned" occur. Before the adoption of the Bankruptcy Reform Act of 1994, courts analyzed this problem in a number of ways. *See* discussions and collections of cases in *In re Thompson*, 894 F.2d 1227 (10th Cir.1990); *In re Hurt*, 158 B.R. 154, 156–58 (9th Cir. BAP 1993); and *In re Christian*, 199 B.R. 382, 386–87 (Bankr.N.D.Ill. 1996), *rev'd, Christian v. Citibank, FSB (In re Christian)*, 214 B.R. 352 (N.D.Ill.1997). Only the Third Circuit believed that the foreclosure sale was not the extinguishing point. *Id.* The Seventh Circuit in *In re Tynan*, 773 F.2d 177 (7th Cir.1985), held that the chapter 13 power to cure and reinstate could not be invoked after the foreclosure sale.[3] Contrary to the Seventh Circuit's *Tynan* and *Clark* decisions, the Third Circuit held that the entry of a foreclosure judgment ended the contractual relationship, so that there was nothing left to cure. *In re Roach*, 824 F.2d 1370, 1377 (3d Cir.1987). *See also First Nat'l Fidelity Corp. v. Perry*, 945 F.2d 61, 63, 65 (3d Cir.1991). It is significant here that no circuit court had held that the right to cure survived until judicial confirmation of the sale. *See In re Christian*, 199 B.R. at 386.

Against that backdrop, Congress tried to resolve the issue by enacting § 1322(c)(1) as part of the Bankruptcy Reform Act of 1994. Section 1322(c)(1) states in pertinent part that "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." § 1322(c)(1). The legislative history is explicit that the purpose of this enactment was to overrule the Third Circuit position.

Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach*, 824 F.2d 1370 (3d Cir. 1987), all of the Federal Circuit Courts of

---

**3.** The bankruptcy courts in this district followed *Tynann* even after Illinois revised its foreclosure law in 1987 and adopted the Illinois Mortgage Foreclosure Law ("IMFL"), 735 ILCS § 5/15–1101 to –1706 (1992 & Supp.1997); they settled on the date of sale as the cut off point. *See Beaty*, 116 B.R. 112; *In re Josephs*, 85 B.R. 500, 506 (Bankr.N.D.Ill.1988), *aff'd*, 93 B.R. 151 (N.D.Ill.1988).

Appeal had held that such right continues at least up until the time of the foreclosure sale. See *In re Glenn*, 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985); *Matter of Clark*, 738 F.2d 869 (7th Cir.1984), cert. denied, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985). The *Roach* case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.

This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

H.R.Rep. No. 103–835, at 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361. Congress, however, may have fallen short of its goal to resolve conflicting analyses and conclusions. A leading authority describes the post-§ 1322(c)(1) enactment cases as follows:

Whatever hope there may have been that the 1994 amendment to § 1322(c)(1) would clarify the point in the deterioration of a home mortgage after which a Chapter 13 debtor cannot cure defaults, the early reported cases present a chaos of inconsistent interpretations and outcomes reminiscent of the pre-1994 mess that § 1322(c)(1) was supposed to resolve.

Keith M. Lundin, *Chapter 13 Bankruptcy* § 4.54, at 371 (2d ed. Supp. 1997–98).

**The district courts have misconstrued § 1322(c) and the IMFL by holding that the right to cure and reinstate residential mortgages extends to confirmation of the sale.**

Believing that § 1322(c) did not change existing Seventh Circuit law, two bankruptcy judges interpreted § 1322(c)(1) to cut off the power to cure a mortgage default on a debtor's principal residence at the time of the foreclosure sale, rather than the later date when the foreclosure court confirms the sale.[4] *See McEwen v. Federal National Mortgage Association (In re McEwen)*, 194 B.R. 594, 595 (N.D.Ill.1996) (discussing the bankruptcy court's ruling) and *In re Christian*, 199 B.R. 382 (Bankr.N.D.Ill.1996). Two district judges reversed those decisions, however, holding that the power to cure and reinstate was not cut off until confirmation of the sale. *See Christian v. Citibank*, 214 B.R. 352 (N.D.Ill.1997) and *McEwen*, 194 B.R. 594 (N.D.Ill.1996). These district court decisions held "that under Illinois law ... a foreclosure sale has not been conducted until the judicial sale has been confirmed by the court." *McEwen*, 194 B.R. at 596. *See also Christian*, 214 B.R. at 354.

In *McEwen*, the court said that Illinois foreclosure "courts have broad discretion in approving or disapproving sales made at their direction" and characterized "[t]he highest bid ... at a judicial sale" as "merely an irrevocable offer to purchase the property and acceptance of the offer takes place when the court confirms the sale." 194 B.R. at 596 (citations omitted). Until court confirmation of a foreclosure sale, when title passes, the court concluded, "there is not a true sale in the legal sense." *Id.* (citations omitted). In *Christian*, the district court said that "the IMFL states that the mortgage lien does not terminate until confirmation of the judicial sale has been ordered" and believed that "[i]n Illinois, a purchaser at a foreclosure sale receives only a lien on the subject property, ... [which] does not constitute an ownership interest in the land." 214 B.R. at 355. In addition, the court believed that "1322(c)(1)'s language and legislative history also supported the conclusion that a debtor in Illinois may cure a mortgage default up to the time of confirmation." *Id.* This Court disagrees with both the reasoning and conclusions of *McEwen* and *Christian*.

---

4. These decisions are in accord with "a majority of reported decisions [that interpret 'sold at a foreclosure sale'] to mean a 'gavel rule'—the Chapter 13 debtor's right to cure defaults expires when the auctioneer, sheriff, or other party conducting the foreclosure sale bangs the gavel on the last bid." *Id.* (collecting cases).

■ The *McEwen* court was wrong when it treated the purchaser at a foreclosure sale as a mere offeror whose bid was subject to discretionary acceptance or rejection by the foreclosure court. In fact, the purchaser acquires a right to a deed that can be denied only if the foreclosure court finds on one of four statutory grounds that the sale did not conform to Illinois law. Absent such a finding, it must confirm the sale, and the purchaser must be given a deed. The *McEwen* court was also wrong when it said that a foreclosure sale is not a "true sale in the legal sense." In fact, the purchaser acquires a right to a deed, and the mortgagor loses any right to retain title, so long as the sale was conducted according to Illinois law, as determined at the confirmation hearing. The sale, therefore, results in the creation of enforceable rights in the property; the purchaser buys the property, subject to confirmation and a judicial lien.

■ The *Christian* court was wrong when it said that a purchaser gets only a lien. The purchaser does not get a lien; there is no obligation owed to the purchaser to be secured by a lien. The purchaser has a right to a deed. The *Christian* court's holding was based on an Illinois decision that has nothing to do with the issue and confusion between a mortgage lien and a judgment lien. The *Christian* court was also wrong when it said that "1322(c)(1)'s language and legislative history also supported the conclusion that a debtor in Illinois may cure a mortgage default up to the time of confirmation." This Court's detailed explanation of its disagreement with the district courts begins with that last point.

*The district courts ignored § 1322(c)(1)'s plain language and misinterpreted its legislative history.*

Contrary to *Christian*, the plain language and legislative history of § 1322(c)(1) require the extinction of a debtor's right to cure his or her mortgage default at the time an Illinois foreclosure sale is held, not at the time of sale confirmation. Section 1322(c)(1) says nothing about "title" or when a sale is "complete." Rather, it defines the critical point as the time when the "residence is sold at a foreclosure sale that is conducted in accordance with nonbankruptcy law." § 1322(c)(1). Congress could "have used the words 'final', or 'approved', or 'completed', or the phrase 'court approved.'" *In re Toliver,* No. 97–81811, slip op. at 8 (Bankr.C.D.Ill. Aug. 6, 1997). Instead, it used the word "conducted." "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

■ Although this Court believes § 1322(c)(1) is unambiguous, the district court found it necessary to look to that section's legislative history and cited the House report quoted above that refers to the "completion of a foreclosure sale." *Christian,* 214 B.R. at 355. The House report does not define what it means by "completion," and, as we shall see, there is a sharp distinction between the sale and the confirmation. There is no reason to believe that the House report means any more than it says—"completion of the foreclosure sale," not confirmation or court approval of the foreclosure sale or transfer of title. Moreover, the *Christian* court did not quote the context of that statement. As discussed above, the report relied upon by *Christian* makes it clear that Congress meant only to overrule the Third Circuit rule that terminated cure rights at judgment. It cites with approval decisions that extended the right to cure to the time of sale, but says nothing about confirmation of the sale. Nor does it say anything about title. It does, however, say something about redemption rights.

> This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, *some later redemption period* ), the debtor would continue to enjoy such rights in bankruptcy.

*See above* pp. 994–995 for citation and entire quotation (emphasis added). In Illinois, the period of redemption ends before the sale. In other states it may extend after the sale

(the contingency the legislative history worries about). *See, e.g., In re Rambo*, 199 B.R. 747 (Bankr.W.D.Okla.1996) (In Oklahoma the mortgagor's right of redemption does not expire until after confirmation.). Taken in context, then, there is no reason to believe that the phrase "completion of a foreclosure sale" means the point when title passes. It is more reasonably read to refer to the point when a purchaser has acquired a right to title that cannot be defeated by redemption.[5]

Furthermore, there is additional legislative history. When presenting the Bankruptcy Reform Act of 1994, Senator Grassley explained the purpose of § 1322(c)(1) as follows:

> Some homeowners attempt to prevent their homes from being foreclosed upon, even though a bankruptcy [sic, read: state] court has ordered a foreclosure sale. There may be several months between the court order and the foreclosure sale. Section [1322(c)(1)] will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale *actually occurs.*

140 Cong.Rec. S14462 (1994) (emphasis added).

A foreclosure sale necessarily occurs prior to its confirmation; there is nothing to confirm until the sale has been conducted. Indeed, the IMFL contains a section entitled "Judicial sale," in which sale procedures are set forth, *see* 735 ILCS § 5/15–1507 (1992), and another section entitled "Report of sale and confirmation of sale," in which post-sale procedures are set forth, *see id.* § 5/15–1508 (Supp.1997). IMFL § 1508 specifically states that a motion to confirm a sale "shall not be made prior to sale." *Id.* It makes no sense to find that a sale is "conducted" or "actually occurs" or is even "completed" at a hearing that cannot even take place before that sale.[6]

*Both McEwen and Christian fail to understand the significance of an Illinois foreclosure sale to the rights of various parties.*

In *McEwen*, the district court concluded that the bankruptcy court had erred when it relied on this Court's analysis in *Beaty.* 194 B.R. at 596. Because *Beaty* involved § 1322(b)(5), the *McEwen* court felt that the analysis was not applicable to a § 1322(c)(1) inquiry. *Id.* Specifically, the *McEwen* court believed that this Court's focus on "the rights of the parties relative to the mortgage at various points in the foreclosure process" is inappropriate after the enactment of § 1322(c)(1). *Id.* Instead, the district judge believed that "the bankruptcy court should

---

**5.** The *Christian* court cited *Rambo* to support the mistaken proposition that a sale is not conducted in Illinois until it is confirmed. 214 B.R. at 355. *Rambo* discusses the problem of reconciling the legislative history with the language of § 1322(c) in a state where redemption rights survive the sale. It did so by holding that the chapter 13 right to cure extended to confirmation, even though Oklahoma redemption rights survive even beyond confirmation. Perhaps a more straightforward approach would have been to simply say that so long as a purchaser's rights, whether or not evidenced by a deed, are subject to the mortgagor's right to redeem, the residence has not been "sold" within the meaning of § 1322(c). For present purposes, what matters is that in Illinois (with one limited exception not pertinent here) the purchaser at a foreclosure sale acquires rights to the property that are not subject to redemption. To follow a decision like *Rambo* in this state would do violence to the local statutory scheme that was not done in *Rambo* itself.

**6.** In fact, the IMFL is shot through with language that only makes sense if the sale is deemed to be "conducted," and the residence is deemed to be "sold," before confirmation. "[T]he real estate which is the subject of the judgment *shall be sold*

at a judicial sale in accordance with this Section 15–1507." *Id.* § 5/15–1507 (1992). "*Upon* and at *the sale* of mortgaged real estate, *the person conducting the sale* shall give to the purchaser a *receipt of sale.*" *Id.* § 5/15–1507(e) (1992). "The Certificate of Sale shall be in a recordable form, describe *the real estate purchased,* indicate *the date and place of sale* and show the amount paid therefor. The Certificate of Sale shall further indicate that it is subject to confirmation by the court." *Id.* § 5/15–1507(f) (1992). "*A sale may be conducted* by any judge or sheriff." *Id.* § 5/15–1507(b) (1992). "Unless the court finds that … (ii) the *terms of sale were* unconscionable, (iii) the *sale was conducted* fraudulently …, the court shall then enter an order confirming the sale." *Id.* § 5/15–1508(b) (Supp.1997). "After (i) confirmation of the sale, and (ii) payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the court (or, if the court shall so order, *the person who conducted the sale* … ), shall … execute a deed to the holder or purchaser sufficient to convey title." *Id.* § 15–1509 (1992) (emphasis added in all quotations).

have focused upon what it means to conduct a foreclosure sale in accordance with Illinois law." *Id.* In *Christian*, the court cited *McEwen* and *In re Barham*, 193 B.R. 229 (Bankr.E.D.N.C.1996), for the confused proposition that "[t]he legal relationship between parties to a mortgage is not of any concern under § 1322(c) because it involves considerations of nonbankruptcy law." 214 B.R. at 356.

Only by considering "the rights of the parties relative to the mortgage" and the "legal relationship between parties to a mortgage," however, is it possible to "focus[ ] upon what it means to conduct a foreclosure sale in accordance with Illinois law." A sale, by definition, changes rights and legal relationships. What marks the sale (or the "completion" of the sale) is precisely material changes in just those rights and legal relationships. Indeed, protestations to the contrary, both *McEwen* and *Christian* consider the effect of the sale on the parties in their search for the time when the property is sold.[7] What they failed to understand, though, is the extent to which an Illinois foreclosure sale—before confirmation—extinguishes old rights and creates new ones. In obedience of the *McEwen* admonition to focus on "what it means to conduct a foreclosure sale in accordance with Illinois law," therefore, this Court will examine the changes in rights of the parties to a foreclosure process at the moment the sheriff brings down the gavel.

In Illinois, the foreclosure sale marks a point at which the mortgagor's right to remain in title is terminated and a third party's rights in the property begin.[8] *See below* p. 1000. The sale confirmation hearing, although important, does not change the parties' interests in the property; the purchaser's interest comes into being at the time of sale and cannot be defeated unless the sale was not conducted in accordance with applicable law. The sale confirmation hearing ensures that the sale was conducted in accordance with Illinois law. *See* 735 ILCS 5/15–1508 (Supp.1997). The *McEwen* court's failure to explore the rights of various parties to a foreclosure action may have accounted for the mistaken view "that a foreclosure has not been conducted until the judicial sale has been confirmed by the court." *McEwen*, 194 B.R. at 596. A judicial sale is *conducted* on the day the property is put up for sale and a successful bidder receives a receipt. A judicial sale is *confirmed* at the confirmation hearing.

## A Purchaser at a Foreclosure Sale acquires a right to a deed, not a lien, and the high bid is not "merely an irrevocable offer."

*The district court in McEwen relied upon inapposite dicta when it erroneously described the high bid as a "mere ... offer."*

The *McEwen* court's description of Illinois foreclosure sales is based entirely on a quota-

---

7. Nor is *Barham* to the contrary, although it does say that "the restriction on a chapter 13 debtor's ability to cure is now determined only by when the foreclosure sale is completed, and not when the parties' rights are altered." 193 B.R. at 232. In North Carolina, a foreclosure sale is subject to an upset bid of at least 10% more than the high bid at the sale or the last upset bid. It is only if ten days pass without an upset bid that the "the rights of the parties to the sale or resale become fixed." *Id.*, quoting N.C. GEN.STAT. § 45–21–29A (Supp.1995). The court held that "a property is not 'sold at foreclosure sale' in North Carolina until the termination of the upset bid period." 193 B.R. at 231. In Illinois, the rights acquired by a purchaser are fixed at sale and not subject to an upset bid.

8. Of course, the mortgagee is often the successful bidder at a foreclosure sale. However, this common scenario has no bearing on this Court's analysis. The IMFL provides the mortgagor with a special right to redeem when the mortgagee is the successful bidder. 735 ILCS § 5/15–1604 (1992). IMFL Section 5/15–1604 states in pertinent part:

> Special Right to Redeem ... With respect to residential real estate, if (i) the purchaser at the [foreclosure] sale was a mortgagee who was a party to the foreclosure or its nominee and (ii) the sale price was less than the amount ... [necessary for the prior mortgagor to redeem the property under 735 ILCS § 5/15–1603(d)], then, and only in such circumstances, an owner of redemption as specified in ... [735 ILCS § 5/15–1603(a)] shall have a special right to redeem, for a period ending 30 days after the date the sale was confirmed....

735 ILCS § 5/15–1604 (1992). While this section provides a mortgagor with a very narrow exception to the full termination of his or her interests in the property under IMFL § 1404, it also evidences a significant change in the parties' positions. This special right to redeem is not pertinent here.

tion of dicta in *Citicorp Savings of Illinois v. First Chicago Trust Co.,* 269 Ill.App.3d 293, 645 N.E.2d 1038, 206 Ill.Dec. 786 (Ill.App. 1995). 194 B.R. at 596. That dicta, in turn, is based on authorities that have nothing to do with sales under the IMFL. The statement that "a judicial sale is not complete until it has been approved by the trial court" is supported by a case dealing with a tax sale, *In re Rosewell,* 236 Ill.App.3d 473, 603 N.E.2d 753, 177 Ill.Dec. 683 (Ill.App.1992). The statement that "courts have broad discretion in approving or disapproving sales" is also supported by *Rosewell* and a case dealing with the proper forum to challenge conveyances of probate estate property, *Berber v. Hass,* 57 Ill.App.2d 109, 207 N.E.2d 96 (Ill.App.1965). The statement that "[t]he highest bid ... at a judicial sale is merely an irrevocable offer ... and acceptance of the offer takes place when the court confirms the sale," is supported by a 1937 case obviously construing pre-IMFL foreclosure law, *Straus v. Anderson,* 366 Ill. 426, 9 N.E.2d 205 (Ill. 1937). The statement that "there is not a true sale in the legal sense" until a court confirms a sale is supported by another 1937 case again construing pre-IMFL foreclosure law, *Levy v. Broadway–Carmen Bldg. Corporation,* 366 Ill. 279, 8 N.E.2d 671 (Ill.1937).

[■■■■] Apposite authority, on the other hand, establishes that the high bid at a foreclosure sale conducted under the IMFL is more than a "mere offer" subject to discretionary acceptance or rejection. Surely there can be no better reason to reject a "mere offer" than that it is too low. Yet Illinois law is firm that a foreclosure court may not refuse to confirm an IMFL sale on the sole ground that the bid is less than the value of the property.

It is settled that a court of equity has wide discretion in supervising judicial sales to insure that such sales are conducted according to law and free from fraud which could deprive the equity owner of valuable rights. This discretion is not unlimited, however, and it is a firmly established rule that unless there is evidence of mistake, fraud, or violation of duty by the officer conducting the sale, mere inadequacy of

price alone is not sufficient cause for setting aside a judicial sale. It is the policy of the law to give stability and permanency to judicial sales, and, since '[i]t has long been recognized that property does not bring its full value at forced sales, and that the price depends on many circumstances from which the debtor must expect to suffer a loss', it follows that '[m]ere inadequacy of price is no reason for upsetting a judicial sale unless there are other irregularities.'

*Illini Federal Savings and Loan Association v. Doering,* 162 Ill.App.3d 768, 771–72, 516 N.E.2d 609, 611–12, 114 Ill.Dec. 454, 456–57 (Ill.App.Ct.1987) (citations omitted). *See also Standard Bank & Trust Co. v. Callaghan,* 177 Ill.App.3d 973, 532 N.E.2d 1015, 127 Ill.Dec. 186 (Ill.App.Ct.1988). The foreclosure court's discretion, therefore, is limited. The high bidder is entitled to a deed if the sale was "conducted according to law and free from fraud." As explained below, however, the high bidder is entitled to a certificate of sale describing the real estate purchased upon payment of the entire amount bid. Hence, even if the high bid is characterized as an irrevocable offer, it ripens into an enforceable right when the bid balance is paid and the certificate of sale is tendered *prior to confirmation. See below* p. 1000.

*The district court in Christian misinterpreted the CSM Insurance case and erroneously concluded that a purchaser at a foreclosure sale only receives a lien on the subject property.*

In the bankruptcy court's opinion in *Christian,* Judge Wedoff explained that § 1322(c) was adopted against a backdrop of decisions from a majority of courts that held that the Chapter 13 right to cure and reinstate was cut off at the time of sale.[9] 199 B.R. at 386–87. Judge Wedoff also explained that those decisions "made it clear that by foreclosure sale, they meant the event (usually an auction) through which a third party may acquire an ownership interest in the debtor's property, even though title may not actually pass at that point." *Id.* at 386. On appeal, the district judge focused on the phrase "ownership interest" and found Judge Wed-

---

**9.** *See above* pages 993–995.

off's reasoning flawed. *Christian*, 214 B.R. at 355. Citing *CSM Insurance Building, Ltd. v. Ansvar America Insurance Co.*, 272 Ill. App.3d 319, 323, 649 N.E.2d 600, 604, 208 Ill.Dec. 544, 548 (Ill.App.Ct.1995), the district court decided that "[i]n Illinois, a purchaser at a foreclosure sale receives only a lien on the subject property, and a lien does not constitute an ownership interest in the land." *Christian*, 214 B.R. at 355.

*CSM Insurance*, however, holds no such thing; it does not even mention, let alone decide, the interest received by a purchaser at a foreclosure sale. In *CSM Insurance*, a lessor sued its tenant for breach of the lease. Before the lessor filed that action, the lessor's mortgage lender had initiated a foreclosure action against the lessor. While the lessor's action was pending, the mortgage lender obtained a foreclosure judgment, the property was sold, and the sale was confirmed. The tenant unsuccessfully challenged the lessor's standing to sue. The tenant argued that by virtue of "the mortgage, assignment of rents, and the assignment of lease[, the mortgage lender] ... was the real party in interest at the time of the lawsuit." *CSM Insurance*, 272 Ill.App.3d at 322, 649 N.E.2d at 603, 208 Ill.Dec. at 547. Alternatively, the tenant argued that "even if [the lessor] was the real party in interest at the time its lawsuit was filed, it was divested of its rights on entry of the decree of foreclosure and conveyance of the premises to [the mortgagee]." *Id.* The court rejected both arguments on grounds that have no relevance here.[10] The rights of a purchaser at a foreclosure sale before confirmation of that sale were never at issue. The *Christian* court's assertion that such a purchaser "receives only a lien" is therefore wholly unsupported.

*Under the IMFL, a purchaser at a foreclosure sale acquires a right to a deed, not a lien.*

IMFL § 1507(e) provides that "[u]pon and at the sale of the mortgaged real estate, the person conducting the sale shall give the purchaser a receipt of sale. The receipt of sale shall describe *the real estate purchased.* ..." 735 ILCS § 5/15–1507(e) (1992) (emphasis added). Upon full payment of the amount bid, the purchaser receives a Certificate of Sale. *Id.* § 5/15–1507(f) (1992). In accordance with IMFL § 1507(f),

> [t]he Certificate of Sale shall be in a recordable form, describe the real estate purchased, indicate the date and place of sale and show the amount paid therefor. The Certificate of Sale shall further indicate that it is subject to confirmation by the court. The duplicate certificate may be recorded in accordance with Section 12–121. The Certificate of Sale shall be freely assignable by endorsement thereon.

*Id.* The holder of the certificate is entitled to a deed upon confirmation of the sale, unless the court finds one of four grounds to deny confirmation. 735 ILCS § 5/15–1509(a) (1992).[11] Reading the IMFL's sections together, it is clear that a purchaser at a foreclosure sale purchases the sold real estate subject to confirmation and, as shown below, the judgment lien.

The interest represented by the certificate is not a lien. A lien is commonly defined as "[a] charge or security or encumbrance upon property" or "[a] claim or charge on property for payment of some debt, obligation or duty." Black's Law Dictionary 475 (5th ed.1983). *See also* § 101(37). The certificate of sale does not secure anything. Indeed, there is no obligation due the purchaser to be secured. Rather, the certificate evidences

---

10. It held that the mortgage documents, including the assignments of rent and leases, conveyed only a lien, not an ownership interest. Further, since the lease had expired before the lessor filed its suit, the collateral assignment of the lease had also expired. The court disposed of the alternative argument by holding that "the rights of the parties [we]re determined as of the date the lawsuit [wa]s filed." *CSM Insurance*, 272 Ill. App.3d at 323, 649 N.E.2d at 604, 208 Ill.Dec. at 548. The subsequent transfer of title following the foreclosure sale was therefore immaterial.

11. IMFL § 1509(a) states in pertinent part:

> After (i) confirmation of the sale, and (ii) payment of the purchase price and any other amounts required to be paid by the purchaser at sale, the court ... shall upon the request of the holder of the certificate of sale (or the purchaser if no certificate of sale was issued), promptly execute a deed to the holder or purchaser sufficient to convey title.

735 ILCS § 5/15–1509(a) (1992).

the particulars of the foreclosure sale and the purchaser's right to receive a deed upon the happening of a future event. Notably, the certificate of sale must describe "the real estate purchased," as opposed to the real estate subject to a lien. 735 ILCS § 5/15–1507(f) (1992).

Although it is true that the purchaser does not receive title to the purchased property at the foreclosure sale, it is also irrelevant. What is relevant is that the purchaser acquires specific rights in the property. The creation of those rights occurs simultaneously with the termination of the mortgagor's interest in the property. IMFL § 5/15–1404 states that "the interest in the mortgaged real estate of [ ] all persons made a party to [the] foreclosure ... shall be terminated by the judicial sale of the real estate pursuant to a judgment of foreclosure, provided the sale is confirmed in accordance with this Article." 735 ILCS § 5/15–1404 (1992). That section says that it is the sale, not confirmation, that terminates those interests, although the sale must still be confirmed.[12]

*The Christian decision confuses mortgage liens with judgment liens.*

That the district court in *Christian* did not understand the necessary consequence of the creation of rights upon sale is evidenced by its confusion of mortgage liens with judgment liens. The court cited both 735 ILCS § 5/15–1301 and § 5/15–1506(i)(1) to support the mistaken proposition that "the IMFL states that the mortgage lien does not terminate until confirmation of the judicial sale has been ordered." *Christian*, 214 B.R. at 355. The first of those sections, IMFL § 1301, provides that:

> from the time a mortgage is recorded it shall be a lien upon the real estate that is the subject of the mortgage for all monies advanced or applied or other obligations secured in accordance with the terms of the mortgage or as authorized by law, including the amounts specified in a judg-

ment of foreclosure in accordance with subsection (d) of Section 15–1603 [which provides what items are to be included in the amount required to redeem property in foreclosure].

735 ILCS § 5/15–1301 (1992). This section does not state that a mortgage lien survives until confirmation of a foreclosure sale. Rather, it defines the amounts secured by the mortgage lien, including the redemption amount. That is what the mortgagor must pay to release the mortgage lien. However, the mortgagor's right to redeem the property expires even before the sale. *Id.* § 5/15–1603 (1992).[13] At that expiration point, the IMFL § 1301 mortgage lien ceases to have relevance because redemption is no longer possible. After the redemption period expires, the mortgagor no longer has the right to satisfy the mortgage lien. *See* 735 ILCS § 5/15–1603(h) (1992) ("Unless the real estate being foreclosed is redeemed from the foreclosure, it shall be sold.").

Whereas IMFL § 1301 defines the creation and amount of a mortgage lien, the second section cited by the district judge, IMFL § 1506(i)(1), defines the creation and effect of a judgment lien. IMFL § 1506(i)(1) states as follows:

> (i) Effect of Judgment and Lien. (1) Upon the entry of the judgment of foreclosure, all rights of a party in the foreclosure against the mortgagor provided for in the judgment of foreclosure or this Article shall be secured by a lien on the mortgaged real estate, which lien shall have the same priority as the claim to which the judgment relates and shall be terminated upon confirmation of a judicial sale in accordance with this Article.

735 ILCS § 5/15–1506(i)(1) (1992). A judgment lien, not a mortgage lien, survives until sale confirmation. This lien, however, has nothing to do with the rights or obligations of a mortgagor under a mortgage. It secures performance of the judgment of foreclosure

---

**12.** In addition, because a mortgagor's reinstatement and redemption rights expire prior to the sale of the property, there is some question regarding what interests the mortgagor still possesses at the time of sale. See 735 ILCS §§ 5/15–1602 (1992) and 5/15–1603 (1992).

**13.** 735 ILCS § 5/15–1603(b)(1) states that redemption shall expire in a residential mortgage foreclosure action either 7 months from the date the mortgagor is served with summons or by publication or 3 months from the date the judgment of foreclosure is entered, whichever is later.

and sale, not payment of the mortgage debt. For example, even if the mortgagor purchased the property at a foreclosure sale, the mortgagor would need to satisfy this judgment lien, not the mortgage lien, in order to take clean title to the property.[14] If the property that is the subject of a certificate of sale secured a mortgage debt, the mortgagor could release the lien by paying the debt, and the purchaser's rights in the property could be easily defeated.

The judgment lien survives "to permit a . . . [foreclosure judgment creditor] to receive proceeds from the public sale of the property." *Bank of Chicago/Lakeshore v. Menaldi*, 814 F.Supp. 685, 689 (N.D.Ill.1992). *See also* 735 ILCS § 5/15–1508(e) (Supp. 1997) ("Upon confirmation of the sale, the judgment stands satisfied to the extent of the sale price less expenses and costs."). In contrast, the mortgage lien only survives to allow a mortgagor to satisfy the mortgage debt. Once the mortgagor loses the ability to satisfy the mortgage debt, the mortgage lien no longer has any relevance. Further, neither the mortgage lien nor the judgment lien grant a mortgagor any additional rights in the property; both liens exist for the protection of the mortgagee.[15]

The IMFL, like *CSM Insurance*, therefore provides no support for the rejection of Judge Wedoff's conclusion that a purchaser at a foreclosure sale acquires an ownership interest in the purchased property. If the purchaser did not acquire an ownership interest, but had only a lien, or was only an offeror, the mortgagor could purchase the property from a foreclosure sale's successful bidder for the amount necessary to redeem the property. A mortgagor's right to redeem his property under the IMFL, however, only survives after a foreclosure sale in very limited circumstances. *See* 735 ILCS 5/15–1604.[16] Accepting the district court's conclusion that a mortgage lien survives until sale confirmation would allow a judgment debtor to easily get around the IMFL's strict scheme, which requires redemption, in all but very limited circumstances, prior to the foreclosure sale. *See* 735 ILCS §§ 5/15–1603 and 5/15–1604 (1992). In reality, however, once the right to redeem has expired, the judgment lien can only be satisfied by performance of the judgment (that is, the sale of the property and application of the proceeds). The mortgagor's ability to save the property by paying the debt is then gone. At that point, the mortgagor's title is of little significance.

---

**14.** One obvious difference between a mortgage lien and judgment lien is the rate at which interest due the mortgagee is calculated. Interest on a judgment lien is calculated at either the state or federal statutory rate. *See* 735 ILCS § 5/2–1303 (1992); 28 U.S.C. § 1961(a); *World Savings & Loan Association v. Jakubiec*, 793 F.Supp. 825, 826–827 (N.D.Ill.1992). Interest on a mortgage lien is calculated at the rate contained in the note secured by the mortgage. *See* 735 ILCS §§ 5/15–1603(d) and 5/15–1301 (1992). IMFL § 1603 states that the amount required to redeem includes "per diem interest from the date of judgment to the date of redemption calculated at the mortgage rate of interest applicable as if no default had occurred." 735 ILCS § 5/15–1603(d) (1992). IMFL § 1301 states that a mortgage lien includes the amounts "specified in a judgment of foreclosure in accordance with subsection (d) of Section 15–1603." *Id.* § 5/15–1301 (1992).

**15.** The *Christian* court also cited *In re Kohler*, 107 B.R. 167 (Bankr.S.D.Ill.1989), to support the erroneous suggestion that a mortgage lien survives until sale confirmation. *Christian*, 214 B.R. at 355. In *Kohler*, the bankruptcy court stated that "[c]ourts are . . . largely in agreement that after a foreclosure sale, chapter 13 affords a debtor no relief," but "where the bankruptcy petition comes after the foreclosure judgment, courts are split." 107 B.R. at 168. The *Kohler* court then went on to discuss the difference between title and lien theory states and concluded that Illinois is a lien theory state. *Id.* at 169. Based on this conclusion, the *Kohler* court held that a debtor could cure mortgage arrears after a judgment of foreclosure has been entered. In its analysis, however, the court also confused the IMFL § 1301 mortgage lien with the IMFL § 1506(i)(1) judgment lien. The court stated that "Section 15–1603 makes it clear that the mortgage lien is not extinguished upon entry of the judgment of foreclosure, in fact the mortgage lien secures the amounts specified in the judgment. Not only does the mortgage lien survive entry of a judgment of foreclosure, the lien is not terminated until confirmation of a judicial sale. Ill.Rev.Stat. ch. 110, para. 15–1506(i)(1) (1987)." *Id.* Hence, the *Kohler* decision, like *Christian*, does not persuade this court that a mortgage lien survives until sale confirmation.

**16.** `See above` note 8.

**Authority Relied Upon in *Christian* Does Not Support Extension of a Debtor's Right to Cure Past Sale.**

*Christian* relies on dicta in three Illinois appellate opinions that a foreclosure sale is not complete until its confirmation. The significance of those cases, however, is that they demonstrate the foreclosure court's limited discretion to deny confirmation. In *Fleet Mortgage Corp. v. Deale,* "on the last day of the redemption period, the [mortgagors] tendered to [the mortgagee] the total amount of the mortgage foreclosure judgment, *which [the mortgagee] accepted in full payment.*" 287 Ill.App.3d 385, 386, 678 N.E.2d 35, 36, 222 Ill.Dec. 628, 629 (Ill.App.Ct.1997) (emphasis added). As the Illinois Appellate Court explained:

> [T]he trial court did not refuse to confirm the foreclosure sale because of a belated attempt to redeem after the occurrence of a sale and after the period of redemption had expired. Rather, here, the redemption took place with the concurrence of the mortgagee, before the foreclosure sale was conducted ·and before the period of redemption had expired. The mortgagee here merely neglected to make adequate provisions to cancel the subsequently scheduled judicial sale. Consequently, we find no fault with the trial court s exercise of its discretion to disaffirm the sale, thereby giving ascendancy to the protection of the mortgagors right to redeem his [sic] property under the statute over that of the bidder at an erroneously conducted judicial sale.

*Fleet Mortgage,* 287 Ill.App.3d at 390, 678 N.E.2d at 38–39, 222 Ill.Dec. at 631–632. The court's statement that the trial court failed to confirm "an erroneously conducted judicial sale" is noteworthy. *Id.* Its statement that "[a] sale is not complete until it has been approved by the trial court," 287 Ill.App.3d at 388, 678 N.E.2d at 37, 222 Ill. Dec. at 630, simply repeats the dicta in *Citicorp Savings v. First Chicago Trust Company of Illinois,* discussed above, which is based on inapposite authority.

The *Citicorp Savings* decision, 269 Ill. App.3d 293, 645 N.E.2d 1038, 206 Ill.Dec. 786 (Ill.App.Ct.1995), holds that a circuit court properly declined to· confirm a judicial sale that was held by mistake, "based on a provision of the IMFL ... that confirmation may be denied if justice was ... not done." *Christian,* 199 B.R. at 388. In *Citicorp Savings,* the mortgagee had agreed to accept either reinstatement of the mortgage or satisfaction of the entire loan until a date after the expiration of the statutory redemption period. Before the agreed date, however, the property was sold. In addition, "the *Citicorp Savings* decision itself ... describes the property in question as having been sold by the sheriff at a mortgage foreclosure sale." *In re Christian,* 199 B.R. at 388 (quoting *Citicorp Savings,* 269 Ill.App.3d at 294, 645 N.E.2d at 1041, 206 Ill.Dec. at 789).[17]

Similarly, *Grubert v. Cosmopolitan National Bank* also states that the event where the Sheriff received bids on the property was "a public foreclosure sale." 269 Ill.App.3d 408, 409, 645 N.E.2d 560, 562, 206 Ill.Dec. 555, 557 (Ill.App.Ct.1995). In *Grubert,* the Illinois Appellate Court held only that the circuit court had to conduct an evidentiary hearing to determine whether handwritten notes on the order confirming the sale constituted an agreement between the parties to reduce the amount bid at the sale. 269 Ill.App.3d at. 412, 645 N.E.2d at 563, 206 Ill.Dec. at 558.

All three of these decisions show why a sale confirmation hearing is necessary, but do not support the conclusion that a sale does not materially change rights until it is confirmed. IMFL § 1508(b) states that a sale will not be confirmed only if "(i) ... [proper notice] was not given, (ii) the terms of the sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done." 735 ILCS § 5/15–1508(b) (Supp.1997). *Fleet Mortgage* and *Citicorp Savings* explored whether a judicial

---

17. The *McEwen* decision also cited *Citicorp Savings.* 194 B.R. at 596. For additional reasons why *Citicorp Savings* does not alter this Court's conclusion that a foreclosure sale is conducted at the time of the actual sale, see Judge Wedoff's discussion of the case in *In re Christian,* 199 B.R. at 388.

sale was properly conducted as mandated by IMFL § 1508, while *Grubert* held that this section does "not authorize a trial court [ ] to revise the amount of a bid made at the foreclosure sale." 269 Ill.App.3d at 411, 645 N.E.2d at 563, 206 Ill.Dec. at 558.

IMFL § 1404 provides that "the interest in the mortgaged real estate of [ ] all persons made a party in such foreclosure ... shall be terminated by the judicial sale of the real estate, pursuant to a judgment of foreclosure, provided the sale is confirmed in accordance with this Article." 735 ILCS § 5/15–1404 (1992). Only a properly conducted sale extinguishes a mortgagor's interest because only a properly conducted sale may be confirmed. The confirmation process assures that the sale was properly conducted. Should the foreclosure court deem the sale in this case to be unconfirmable, then the sale was not conducted in accordance with applicable nonbankruptcy law and the Debtor would have a right to cure his mortgage default through his chapter 13 plan. Unless the sale is vacated[18], however, he no longer has that right. This Court's modification of the automatic stay, therefore, does not deprive the Debtor of any rights he had when he filed this case. Filing for bankruptcy protection after a properly conducted foreclosure sale but before sale confirmation does not grant a mortgagor any new rights in the property.

**Extending A Mortgagor's Right to Cure Beyond Sale Contravenes the Illinois Legislature's Historic Change in Illinois Foreclosure Law.**

Finally, a close examination of the IMFL's history also leads to the conclusion that Illinois law supports extinguishing a debtor's right to cure at the foreclosure sale. The Illinois legislature passed the IMFL in 1987. Prior to the IMFL's passage, defendants in a mortgage foreclosure action "could redeem their property within six months after sale by paying the purchase price plus interest." *Tynan,* 773 F.2d 177, 177 (7th Cir.1985). As one commentator stated:

Illinois adopted the popular proposal to increase the price at sale—the elimination of the postsale redemption period. Opponents of postsale redemption claimed that the likelihood of outside bidding at the sale was exceedingly low for a number of reasons. First, critics felt the mere possibility of redemption chilled outside bidding. Second, anyone who successfully bid only had a right to receive a deed at the end of the redemption period and had no right to possession in the interim. Consequently, bidders had to face the possibility of vandalism, lack of maintenance, or abandonment.

Catherine A. Gnatek, *The New Mortgage Foreclosure Law: Redemption and Reinstatement,* 1989 U.Ill.L.Rev. 471, 486 (1989) (citation omitted). Allowing a debtor to cure mortgage defaults after sale contravenes the Illinois legislature's significant and purposeful change in foreclosure law to eradicate post-sale redemption. The "mere possibility" of a chapter 13 cure and reinstatement after sale will surely "chill[ ] outside bidding" as much as the possibility of redemption did under former law.

Moreover, the legislature's intent to give finality to sales in order to encourage bidding indicates that a foreclosure sale should be deemed to be conducted when those bids are made, not some later point. If the focus is on "what it means to conduct a foreclosure sale in accordance with Illinois law," *McEwen,* 194 B.R. at 596, the conclusion ought to be one that is consistent with the objectives of that law. Treating the high bid as a "mere offer" subject to discretionary acceptance or rejection, or the high bidder as a lien holder with no fixed rights in the property, is not consistent with the objective of encouraging bidding. This Court's holding, on the other hand, that a "residence is sold" under Illinois law at the sale, not at confirmation, furthers Illinois policy, and, therefore, is more likely to be consistent with what the legislature intended than is the district court holdings in *McEwen* and *Christian.*

---

**18.** In *Fleet Mortgage,* the foreclosure court vacated the sale at the confirmation hearing. 287 Ill.App.3d at 386, 678 N.E.2d at 36, 222 Ill.Dec. at 629. In *Citicorp Savings,* the Illinois Appellate Court states that the foreclosure court reinstated the mortgage necessarily requiring a vacation of the foreclosure sale. *See* 269 Ill.App.3d at 295, 645 N.E.2d at 1041, 206 Ill.Dec. at 789.

**The Mortgagee is not Bound by the Plan.**

The Debtor also argued that First Nationwide should be bound by the terms of his confirmed plan. Section 1327(a) provides that a confirmed plan "binds the debtor and each creditor." First Nationwide, however, ceased being a creditor at the time of the July 14, 1997 sale. At that time, the Debtor no longer owed a debt, and First Nationwide no longer had a claim, secured by the property. As we have seen, after the sale, the Debtor had no right to reinstate his mortgage or redeem the property by paying the mortgage debt, and First Nationwide's right was to the proceeds of sale, not payment of the debt. Since First Nationwide was no longer a creditor, § 1327(a), by its terms, is inapplicable.

### CONCLUSION

For these reasons, this Court holds that Debtor's right to cure his mortgage arrears under Chapter 13 of the United States Bankruptcy Code was extinguished at the time his property was sold at the July 14, 1997 foreclosure sale.