CSM INSURANCE BUILDING, LTD., *et al.*, Plaintiffs-Appellants, v. ANSVAR AMERICA INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—93—3591

Opinion filed April 24, 1995.

Joe R. Milburn and John A. Clark, both of Kanter & Mattenson, Ltd., of Chicago, for appellants.

William Biederman, of Biederman & O'Keefe, Ltd., of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:

The parties to this appeal have spent three years making motions and cross-motions in the trial court. Now we are asked to decide whether the plaintiff had standing to bring the lawsuit in the first place. The trial judge said it did not. We reverse that finding and remand this cause with directions to get on with it.

BACKGROUND

La Salle National Bank (La Salle) was the owner of the legal and equitable title to real estate located at 2775 West Algonquin Road in Rolling Meadows, Illinois. CSM Insurance Building, Ltd. (CSM), an Il-

linois general partnership, was the sole beneficiary of the land trust and is the plaintiff in this case.

On June 21, 1979, La Salle, as lessor, entered into a 10-year lease agreement with the Central Security Mutual Insurance Company, Ansvar's predecessor in interest.

About one month later, on July 22, the Great-West Life Assurance Company (Great-West) loaned CSM's trust $1,125,000. The loan was evidenced by a note and secured by a mortgage of the premises, an assignment of rents, and an assignment of leases.

At the end of 10 years, on September 1, 1989, the lease expired and Ansvar moved out. In the following month, it became clear that CSM could not meet its mortgage obligation to Great-West. CSM was in default.

On February 23, 1990, Great-West filed a complaint for foreclosure of mortgage, specifying defaults of October 10, November 10, and December 10, 1989. The prayer for relief requested either possession of the property or the appointment of a receiver.

While that foreclosure action was pending, CSM filed its complaint against Ansvar on May 8, 1990. At that point, no judgment of foreclosure had been entered, no sheriff's sale had been conducted, and no deed had been issued to Great-West. Great-West did not ask for or obtain a deficiency judgment against CSM.

In its first complaint against Ansvar, CSM alleged that Ansvar failed to maintain the property properly, ultimately leaving the premises in such a deteriorated, unmaintained, and damaged condition that the property could not be relet or sold. That behavior, said CSM, violated the lease.

## PROCEEDINGS IN TRIAL COURT

To reflect the flavor of proceedings in the trial court, we summarize the events that followed the filing of CSM's complaint:

| | |
|---|---|
| 07/13/90 | Ansvar filed a motion to strike or dismiss the complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) based upon improperly computed damages. |
| 07/19/90 | Judgment of foreclosure entered in the Great-West lawsuit. |
| 09/12/90 | Sheriff's sale of premises to Great-West. The premises were purchased for $530,000 by Great-West, creating a deficiency of $680,106.40. No deficiency judgment was entered or requested. |

| | |
|---|---|
| 09/13/90 | Sheriff's report of sale and distribution to Great-West approved and confirmed. |
| 10/29/90 | Ansvar's motion to dismiss complaint in this case was granted. |
| 12/21/90 | CSM filed amended complaint alleging, alternatively, breach of lease (count I), negligence (count II) and intentional mistreatment of property (count III). |
| 1/18/91 | Ansvar filed a section 2—619 motion to dismiss count I of the complaint, arguing: as CSM no longer owned premises, it no longer had a basis for recovery on diminution of value; as CSM was not a party to the written lease agreement and there was no allegation that the lease had been assigned to CSM, no privity of contract existed between CSM and defendant. Ansvar filed a section 2—615 motion to dismiss counts II and III arguing: Count II— Only difference between I and II is that rather than allege that defendant breached the lease, plaintiffs state that defendant breach a duty of care and maintenance arising out of the lease. Ansvar argued that pursuant to *Moorman Manufacturing Co. v. National Truck Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324, economic loss is not recoverable in a negligence action. With regard to count III Ansvar argued complaint did not allege facts, merely stated legal conclusions. In addition plaintiffs sought to recover economic loss in a tort action. |
| 07/03/91 | Trial court granted a section 2—615 motion to dismiss counts II and III. Section 2—619 motion to dismiss count I denied. Plaintiffs given leave to file amended counts II and III. |
| 07/29/91 | CSM filed motion to reconsider alleging that the trial court misapplied the *Moorman* doctrine. |
| 08/19/91 | Ansvar filed a motion to reconsider denial of motion to dismiss, alleging that although the trial court denied the motion to dismiss with respect to the damage allegation, it did not address the allegation that CSM was not a proper party due to lack of privity. |
| 08/28/91 | Ansvar filed its answer to count I and affirmative defenses. |
| 09/04/91 | CSM moved to strike answer and affirmative defenses. |

| | |
|---|---|
| 03/06/92 | Trial court denied motions to reconsider. Plaintiff's motion to strike granted in part and denied in part. Defendant granted 28 days to file an amended answer and affirmative defenses. Count I still alive. |
| 04/06/92 | Ansvar filed amended answer and affirmative defenses. |
| 04/27/92 | CSM filed a motion to strike the amended affirmative defenses. |
| 10/30/92 | Ansvar filed amended affirmative defenses. |
| 11/10/92 | CSM filed a motion to strike the affirmative defenses. |
| 11/13/92 | CSM ordered to pay discovery sanctions. |
| 01/06/93 | Ansvar brought a motion to dismiss pursuant to section 2—619(2) (735 ILCS 5/2—619(2) (West 1992)). Ansvar argued that the proper party plaintiff was Great-West and that the pending case is legally deficient because plaintiffs are not a party in interest, having made a full and complete assignment of all their rights under the lease with the defendant. |
| 04/28/93 | Trial court granted CSM's motion to strike defendant's "Second Amended Third Affirmative Defense." |
| 05/13/93 | Trial court granted defendant's section 2—619 motion to dismiss. Trial court denied CSM's motion to reconsider and vacated the order of November 13, 1992 (imposition of sanctions). |
| 06/09/93 | CSM filed motion to reconsider and vacate the order of dismissal entered May 13, 1993. |
| 09/27/93 | Plaintiffs' motion to reconsider denied. |

Plaintiff appeals from the trial court's dismissal of its lawsuit on standing grounds. It also appeals the trial court's imposition of sanctions for discovery violations.

## DECISION

### THE TRIAL COURT'S ORDER DISMISSING THE LAWSUIT

In the trial court, and here, Ansvar argues that in three separate documents—the mortgage, the assignment of rents, and the assignment of lease—CSM assigned its entire right, title, and interest in the leased property. That means, says Ansvar, Great-West, not CSM, was the real party in interest at the time of the lawsuit. Further, says Ansvar, even if CSM was the real party in interest at the time its lawsuit was filed, it was divested of its rights on entry of the decree of foreclosure and conveyance of the premises to Great-West.

CSM responds that its standing was determined and fixed as of the time it filed its lawsuit on May 8, 1990. The mortgage and the assignments were collateral assignments. That means, says CSM, there was no intent to transfer any interest after the underlying lease expired. That is, once the lease expired, the collateral assignment expired. That would be September 1, 1989, 10 months before Great-West obtained its foreclosure judgment.

An examination of the mortgage and assignment documents supports CSM's position. The mortgage provides that the assignment of rents and leases is "to further secure the indebtedness***."

The assignment of lease provides:

> "This assignment is given as additional security for the payment of the note of the Assignor ***,"

and:

> "Although it is the intention of the parties that this instrument shall be a present assignment, it is expressly understood and agreed, anything herein contained to the contrary notwithstanding, that the Assignee shall not exercise the rights or powers herein conferred upon it until a default shall occur under the terms and provisions of this assignment or of the note or mortgage***,"

and:

> "This assignment is intended to be supplementary to and not in substitution for or in of any assignment of rents to secure said indebtedness contained in the mortgage or any other document."

This court construed almost identical language in *M. Ecker & Co. v. La Salle National Bank* (1994), 268 Ill. App. 3d 874, 880, 645 N.E.2d 335.

This kind of assignment, said the court, is not absolute. It is a grant of a lien as "additional security for the mortgage loan."

■ Applying the holding of *M. Ecker & Co.*, we find that the mortgage and assignments in this case did not convey any ownership interest to Great-West. They granted an equitable lien as additional security for the mortgage. That means CSM remained the owner of the rents and profits from the property until Great-West obtained its foreclosure judgment. Since the lease with Ansvar expired before there was any default on the Great-West loan, the collateral assignment of the lease also expired. The default and foreclosure did not deprive CSM of standing to bring its lawsuit.

There is another reason why CSM's default and the judgment of foreclosure had no impact on CSM's standing to bring this lawsuit. The rights of the parties are determined as of the date the lawsuit is filed. (*Bleck v. Cosgrove* (1961), 32 Ill. App. 2d 267, 177 N.E.2d 647.) When this lawsuit was filed, there had been no foreclosure judgment, no sheriff's sale, no deed issued to Great-West. CSM had standing to sue Ansvar on May 8, 1990. Subsequent events could not erase it.

If Ansvar thought Great-West was a necessary or desirable party to this case, it could have made a motion for substitution of parties under section 2—1008 (735 ILCS 5/2—1008 (West 1992)). Certainly, Great-West showed no interest in being part of this lawsuit. In its own case Great-West did not obtain a deficiency judgment against CSM.

The trial court erred when it dismissed CSM's lawsuit for lack of standing. We have not stopped to consider the effect of the section 2—619 motion being filed and heard while Ansvar's answer and affirmative defenses were pending. That does not mean we condone the practice.

### DISCOVERY SANCTIONS

The trial court awarded $1,008 in attorney fees and costs as sanctions against plaintiff for discovery delays. The sanctions grew out of CSM's late production of documents and answers to interrogatories.

Ansvar had filed its document request and interrogatories on October 10, 1991. Most of the discovery was outstanding on March 18, 1992, when Ansvar filed a motion to compel responses. The trial court granted plaintiffs until April 27 to comply. On May 8, 1992, the trial court ordered CSM to comply by May 29, adding the words: "Final extension." On May 29 CSM answered some of the interrogatories, objected to others, and objected to some requests for production of documents. Some documents were delivered on June 10, 1992. Documents were produced in lieu of answers to certain interrogatories, but plaintiff did not specify which documents responded to which interrogatories.

On June 22, 1992, the trial court overruled plaintiff's objections to interrogatories as untimely. Sanctions were awarded on November 13, 1992.

We have not set out all the motions and responses engendered by the sparring over discovery production. It is enough to say the plaintiff caused unnecessary delays in the litigation because of its half-hearted responses to discovery requests. The trial judge was especially and justifiably annoyed by the plaintiff's long delay in raising objections to the defendant's discovery requests.

We do not disturb the trial judge's finding that she never intended to extend the time for making objections when she gave the plaintiff time to comply with Ansvar's discovery requests.

The trial judge has broad discretion in these matters. (*Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1.) Requiring the payment of attorney fees caused by a party's delay is a reasonable discovery sanction. *Rush v. Leader Industries, Inc.* (1988), 176 Ill. App. 3d 803, 531 N.E.2d 863.

In this case, the defendant filed an affidavit that supported the amount of money awarded. The fact that Ansvar's original motion for sanctions asked for half that amount did not limit the exercise of the trial judge's discretion.

We affirm the award of attorney fees and costs in the amount of $1,008.

CONCLUSION

The dismissal of the plaintiff's complaint for lack of standing is reversed and the cause is remanded to the trial court for further proceedings. The award of attorney fees and costs to the defendant for plaintiff's violation of discovery rules is affirmed.

Affirmed in part; reversed and remanded in part.

BUCKLEY and BRADEN, JJ., concur.