Dorsey **CHRISTIAN**, Jr.,
Plaintiff–Appellant,

v.

**CITIBANK, F.S.B.** and **Illinois Real Estate Opportunity Fund I,**
Defendants–Appellees.

No. 96 C 5943.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 5, 1997.

Jeffrey B. Rose, Tishler & Wald, Chicago, IL, for Appellant.

Steven B. Bashaw, McBride, Baker & Coles, Chicago, IL, for Appellee.

1. The other defendant in this case, Illinois Real Estate Opportunity Fund I, was dismissed voluntarily by the plaintiff on appeal.

2. A more detailed factual summary may be found in the bankruptcy court's opinion. *In Re Chris-*

Melvin J. Kaplan, Law Offices of Melvin J. Kaplan, Chicago, IL.

Craig Phelps, Chapter 13 Trustee, Chicago, IL.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The issues on appeal in this bankruptcy case turn on a determination of whether a debtor, pursuant to 11 U.S.C. § 1322(c)(1), has a right to cure a mortgage default subsequent to a foreclosure sale but prior to judicial confirmation of that sale. The bankruptcy court held that the plaintiff, Dorsey Christian, Jr., lacked any right to cure his default following the foreclosure sale. Based in part on this holding, the bankruptcy court further held that the defendant, Citibank F.S.B. ("Citibank"),[1] did not violate the automatic stay provision of the bankruptcy code when it moved to confirm the foreclosure sale in state court, and the court granted Citibank's motion to annul the stay. Mr. Christian appeals from these rulings arguing that they are based on a faulty reading of Section 1322(c)(1). For the following reasons, the decision of the bankruptcy court is reversed and remanded for additional proceedings consistent with this opinion.

### Background[2]

In April 1994, Citibank initiated foreclosure proceedings on Mr. Christian's home. In response, Mr. Christian filed for Chapter 13 bankruptcy protection, and he included a plan for bringing his payments to Citibank current. When Mr. Christian subsequently fell behind in his payments, the bankruptcy court dismissed the plan. Citibank then continued its foreclosure proceedings, and Mr. Christian's home was sold at a foreclosure sale on January 26, 1996.

Following the foreclosure sale of Mr. Christian's home but prior to confirmation of that sale by the state court, Mr. Christian

*tian*, 199 B.R. 382, 384 (Bankr.N.D.Ill.1996), Because the parties agree that no facts are in dispute, I have limited the background discussion to the most relevant facts.

sought to cure the default of his mortgage by reinstating the bankruptcy plan, pursuant to 11 U.S.C. § 1322(c)(1). The bankruptcy court reinstated the plan but only with the understanding that reinstatement would not invalidate Citibank's foreclosure action. Citibank subsequently moved the state court for confirmation of the foreclosure sale, which was granted on March 13, 1996. Citibank, however, failed to ask the bankruptcy court for relief from the automatic stay prior to its motion for confirmation. As a result, Mr. Christian moved the bankruptcy court for sanctions against Citibank for violating the automatic stay. Citibank, in turn, moved to annul the stay *nunc pro tunc* to February 7, 1996, a date prior to its motion for confirmation in state court.

The bankruptcy court granted Citibank's motion to annul the stay and denied Mr. Christian's motion for sanctions. *Christian,* 199 B.R. at 389. The court reasoned that the equities favored an annulment of the stay on several grounds. *Id.* First, Mr. Christian had no legitimate grounds for opposing relief from the stay because he had no right to cure his default following a foreclosure sale. *Id.* Second, Citibank reasonably could have believed that Mr. Christian would not object to the confirmation because he sought reinstatement of his bankruptcy plan against all creditors except for Citibank. *Id.* Third, Mr. Christian did not object to the confirmation at the hearing itself, during his eviction, or prior to the improvements on his property by Citibank. *Id.* Finally, Citibank had taken several substantial actions in reliance on the finality of the foreclosure sale. *Id.*

### *Construction of Section 1322(c)(1)*

■ A district court reviews factual conclusions of the bankruptcy court under a "clearly erroneous" standard, but legal conclusions are reviewed *de novo. Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir.1994). As noted above, the parties agree that no factual issues are in dispute, and the main issue to decide on appeal is the proper legal interpretation of 11 U.S.C. § 1322(c)(1).

Section 1322(c)(1), added to the bankruptcy code in 1994, states that "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is *sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.*" (emphasis added). In order to determine when the period for curing a mortgage default ends, I must determine at what point a home is "sold at a foreclosure sale that is conducted" according to relevant nonbankruptcy law. Because of this reference to nonbankruptcy law, I first will examine the statutory and case law concerning mortgage foreclosures in Illinois.

The Illinois Mortgage Foreclosure Law ("IMFL"), 735 ILCS 5/15–1101 to –1706 (1994), governs the process of foreclosure on residential property in Illinois. Under the IMFL, residential property is sold at a judicial sale after entry of judgment of foreclosure and after the period for redemption has expired. 735 ILCS 5/15–1507(b). Once the property has been purchased, the person who conducted the sale must make a report to the state court overseeing the foreclosure. 735 ILCS 5/15–1508(a). The court then will conduct a hearing to confirm the sale, and confirmation will be granted unless the court finds that the sale did not comply with one or more of the four enumerated grounds in the statute. 735 ILCS 5/15–1508(b).

■ The sale of foreclosed property is not complete until the court enters an order confirming the sale. *Fleet Mortgage Corp. v. Deale,* 287 Ill.App.3d 385, 222 Ill.Dec. 628, 630, 678 N.E.2d 35, 37 (1st Dist.1997); *Citicorp Savings v. First Chicago Trust Co.,* 269 Ill.App.3d 293, 206 Ill.Dec. 786, 793, 645 N.E.2d 1038, 1045 (1st Dist.1995); *Grubert v. Cosmopolitan Nat'l Bank,* 269 Ill.App.3d 408, 206 Ill.Dec. 555, 558, 645 N.E.2d 560, 563 (2nd Dist.1995). Accordingly, the purchaser does not receive the deed to the property prior to confirmation, 735 ILCS 5/15–1509(a), and neither legal nor equitable title pass to the purchaser at the time of the judicial sale. *In Re Cadwell's Corners Partnership,* 174 B.R. 744, 751–52 (Bankr.N.D.Ill.1994); *Newport Condominium Ass'n v. Talman Home Fed. Savings and Loan Ass'n,* 188 Ill.App.3d 1054, 136 Ill.Dec. 612, 615, 545 N.E.2d 136,

139 (1st Dist.1988). The Illinois Supreme Court has held that:

> the giving of a mortgage is not a separation of title, for the holder of the mortgage takes only a lien thereunder. After foreclosure of a mortgage and until delivery of the master's deed under the foreclosure sale, purchaser acquires no title to the land either legal or equitable.

*Kling v. Ghilarducci*, 3 Ill.2d 454, 121 N.E.2d 752, 756 (1954). The enactment of the IMFL in 1987, after Kling was decided, does not alter the Kling court's conclusion because the IMFL states that the mortgage lien does not terminate until confirmation of the judicial sale has been ordered. 735 ILCS 5/15–1301, –1506(i)(1); *In Re Kohler*, 107 B.R. 167, 169 (Bankr.S.D.Ill.1989).

With this understanding of the IMFL in mind, I turn to the language and legislative history of Section 1322(c)(1). Congress enacted this section as part of the Bankruptcy Reform Act of 1994. The House report stated that one of the policy goals behind the new law included the "strengthening of a debtor's right to cure a home mortgage default in a Chapter 13 plan." H.R.Rep. No. 103–835, at 34 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3342. To achieve that end, the report explains that a debtor may "cure home mortgage defaults at *least through completion* of a foreclosure sale *under applicable nonbankruptcy law.*" *Id.* at 52, 1994 U.S.C.C.A.N. at 3361 (emphasis added).

■ Based on the legislative history alone, a residence is not "sold" under Section 1322(c)(1) until the foreclosure sale is completed under relevant state law. *In Re Rambo*, 199 B.R. 747, 751 (Bankr.W.D.Okla. 1996); *In Re Barham*, 193 B.R. 229, 232 (Bankr.E.D.N.C.1996). Confirmation is part of the procedural requirements for a valid foreclosure sale in Illinois, and without confirmation, a residence is not "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" under Section 1322(c)(1). *Rambo*, 199 B.R. at 751; *Barham*, 193 B.R. at 232.[3] Because a foreclosure sale is not complete in Illinois until a court has confirmed the sale, a debtor in Illinois may cure a mortgage default up to the time of confirmation. *See McEwen v. Federal Nat'l Mortgage Ass'n*, 194 B.R. 594, 596 (N.D.Ill.1996).

In the instant case, the bankruptcy court examined several cases decided prior to the enactment of Section 1322(c)(1), and it found "by 'foreclosure sale,' [these courts] meant the event (usually an auction) through which a third party may acquire an ownership interest in the debtor's property, even though title may not actually pass at that point." *Christian*, 199 B.R. at 386. The bankruptcy court held that Section 1322(c)(1) was enacted with this understanding, and therefore Section 1322(c)(1) did not change the point in time in the foreclosure process when a debtor may cure default. *Id.* at 387. The right to cure a mortgage default pursuant to a Chapter 13 plan ended "at the time the debtor's property was put up for sale to third parties—the time of the 'foreclosure sale.'" *Id.*

■ Both the bankruptcy court's premise and conclusion are flawed. In Illinois, a purchaser at a foreclosure sale receives only a lien on the subject property, and a lien does not constitute an ownership interest in the land. *CSM Ins. Bldg., Ltd. v. Ansvar Am. Ins. Co.*, 272 Ill.App.3d 319, 208 Ill.Dec. 544, 548, 649 N.E.2d 600, 604 (1st Dist.1995).[4] Thus, to the extent that the bankruptcy court's decision relied on the fact that an ownership interest passed to the purchaser

---

**3.** Some courts have interpreted this section to mean that the sale only must be conducted in a procedurally correct manner. *See In Re Hric*, 208 B.R. 21, 25 (Bankr.D.N.J.1997); *In Re Simmons*, 202 B.R. 198, 203 (Bankr.D.N.J.1996). Even if I were to adopt this interpretation, I still would conclude that a residence is not sold at a foreclosure sale in Illinois until the sale is confirmed because confirmation is part of the proper procedure for a foreclosure sale.

**4.** The Illinois legislature also has defined a "nonownership interest" as including a lien on property. 35 ILCS 200/21–285. Although this definition is found in the statutes concerning property taxes, it nonetheless provides additional support for the conclusion that a lien does not amount to an ownership interest in property.

at the conclusion of the actual foreclosure sale, that reliance was misplaced.

In addition, contrary to the bankruptcy court's holding, Section 1322(c)(1) did, in fact, change the cutoff point for curing a mortgage default. Prior to the enactment of this section, the cutoff period was determined according to Section 1322(b)(5). *See McEwen,* 194 B.R. at 596. That "provision bases the right to cure upon the terms of the claim," and courts that analyzed this section focused on the rights of the parties with respect to the mortgage "at various points in the foreclosure process." *Id.* Section 1322(c) changes that focus because it directs that the time period for curing default is to be determined "notwithstanding ... applicable non-bankruptcy law." *See Barham,* 193 B.R. at 232. The legal relationship between parties to a mortgage is not of any concern under Section 1322(c) because it involves considerations of nonbankruptcy law. *McEwen,* 194 B.R. at 596; *Barham,* 193 B.R. at 232. The section is concerned only with the time when the foreclosure sale is complete, and in Illinois, that time does not occur until the sale has been confirmed by a court.

### Motion to Annul the Stay

■ The bankruptcy court based its decision to annul the stay *nunc pro tunc* in part on the belief that Mr. Christian could not cure his mortgage default at that point in time. *Christian,* 199 B.R. at 389. Because I have held that Section 1322(c)(1) permits a debtor to cure a mortgage default until the foreclosure sale is confirmed, the court's decision to annul must be reversed. I am remanding the case back to the bankruptcy court, however, for a new determination whether the balance of equities favors granting the annulment of the stay or the imposition of sanctions for violating it.

On remand, the bankruptcy court should reconsider the soundness of its second and third reasons for granting the motion to annul. The court stated that Mr. Christian's counsel reasonably led Citibank to believe that Mr. Christian would not oppose confirmation of the foreclosure sale because he only sought reinstatement of his bankruptcy case in order to make payments to creditors other than Citibank. Id. at 389. It also reasoned that Mr. Christian had no objection to the confirmation because he made no attempt to oppose it at the hearing, during his eviction or prior to the completion of improvements on his property. Id. An examination of the February 7, 1996 hearing transcript, in which the court and counsel discussed reinstatement, reveals otherwise. Mr. Christian's attorney asked Judge Wedoff for his position on whether the foreclosure sale could be vacated in light of Mr. Christian's motion to reinstate his bankruptcy case. Tr. at 2–3. Judge Wedoff responded in the negative, Tr. at 3–5, and only after that response did Mr. Christian's counsel then ask for reinstatement for all creditors except Citibank. Tr. at 5. Judge Wedoff granted the motion to reinstate but only with the express understanding that the order would "specify that nothing in this order invalidates the foreclosure sale." Tr. at 6–7.

In light of this exchange at the hearing, Mr. Christian apparently wanted reinstatement of his bankruptcy case as it pertained to Citibank. However, Judge Wedoff's explicit statement that Mr. Christian could not undo the foreclosure sale may have led Mr. Christian to believe that to continue to press the point and oppose confirmation was futile. Accordingly, the bankruptcy court on remand should consider the effect of its statements and rulings on Mr. Christian's actions when balancing the equities at issue.