# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2593

NORMA I. COLON,

*Debtor-Appellant,*

v.

OPTION ONE MORTGAGE CORPORATION,
and/or its assigns,

*Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1441—**Charles P. Kocoras**, *Chief Judge.*

ARGUED DECEMBER 13, 2002—DECIDED FEBRUARY 11, 2003

Before RIPPLE, KANNE and ROVNER, *Circuit Judges.*

RIPPLE, *Circuit Judge.* This case requires that we determine the relationship between 11 U.S.C. § 1322(c)(1) of the Bankruptcy Code and the Illinois Mortgage Foreclosure Law, *see* 735 ILCS 5/15-1508(b). This issue has divided the bankruptcy and district courts sitting in Illinois. In this case, the bankruptcy court and the district court determined that the right of an Illinois debtor to cure a default expires upon completion of the foreclosure sale of the property and does not continue during the period between that sale and the judicial confirmation of that sale

by the state court. We agree with that determination, and therefore affirm the judgment of the district court.

# I

# BACKGROUND

## A.

The underlying facts are not disputed. On January 14, 2000, Ms. Colon executed a note secured by a mortgage on her principal residence located in Lincolnwood, Illinois. On November 14, 2000, Option One Mortgage Corporation ("Option One"), the holder of the note, filed a complaint in the Circuit Court of Cook County to foreclose the mortgage. On May 16, 2001, a judgment for foreclosure and sale was entered in that foreclosure proceeding; on January 7, 2002, the sheriff conducted a foreclosure sale of the residence. On January 10, 2002, prior to the judicial confirmation hearing mandated by the Illinois Mortgage Foreclosure Law, Ms. Colon filed a voluntary petition under Chapter 13 of the Bankruptcy Code. She also filed a Chapter 13 plan, which provided for the cure of her default on the note and mortgage. On February 4, on the motion of Option One, the bankruptcy court lifted the automatic stay to permit Option One to proceed in the Illinois foreclosure action. Ms. Colon appealed this decision of the bankruptcy court to the district court; that court upheld the decision of the bankruptcy court. Ms. Colon then took this further appeal to this court.

## B.

In determining that the bankruptcy court had committed no error in lifting the automatic stay and in permitting the foreclosure hearing to proceed in the Illinois

court, the district court recognized that it had to determine whether Illinois law allows a debtor to cure a default after the property is sold at a foreclosure sale. The court further recognized that, in deciding this matter, it had to determine the relationship between § 1322(c)(1) of the Bankruptcy Code and the Illinois Mortgage Foreclosure Act, 735 ILCS 5/15-1501-09. Section 1322(c)(1) of the Bankruptcy Code provides that "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured . . . until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . ." 11 U.S.C. § 1322(c)(1). The Illinois Mortgage Foreclosure Act sets forth a multi-step process, culminating in a hearing after the property is purchased in the sheriff's sale. More precisely, the Illinois statute requires that, after the sheriff's sale, there must be a hearing before the state court. That court must approve the sale unless it determines that the sale was flawed in one of four ways: (1) the notice given was not proper; (2) the sale terms were unconscionable; (3) the sale involved fraud; or (4) justice was not otherwise done. *See* 735 ILCS 5/15-1508(b). If the court approves the sale, the purchaser is permitted to exchange the certificate of sale issued at the foreclosure sale for a deed that conveys title.

The district court concluded that, for purposes of bankruptcy, a debtor's right to cure a default is extinguished after the property has been sold at a judicial sale, not when a sale is confirmed by the state court. The court concluded that:

> Although confirmation is not a mere formality in the state arena, its significance to federal concerns is too minimal to justify extending the period for cure to that point. For the purposes of § 1322(c)(1), the sale is conducted in accordance with applicable nonbank-

ruptcy law once the highest bid is entered and accepted. Any other result would allow a federal procedural mechanism to afford greater rights than would otherwise be available under state substantive law.

*Colon v. Option One Mortgage*, No. 02 C 1441, 2002 WL 1263986, at *2 (N.D. Ill. June 6, 2002).

The district court further reasoned that "Congress clearly intended to extend the debtor's right to cure to the outer limits allowed under state law . . . [but] the intent could not have included a desire to permit the debtor, through creative invocation of bankruptcy protection, to do an end-run around state law once all substantive events have come and gone." *Id.* The district court accordingly determined that the bankruptcy court's decision was not based on an erroneous legal conclusion and, therefore, the bankruptcy court had not abused its discretion in permitting the state confirmation hearing to proceed. *Id.*

## II

## DISCUSSION

### A.

The parties agree that the district court correctly stated the standard of review. The bankruptcy court's grant of relief from the automatic stay is reviewed for an abuse of discretion. *See In re Williams*, 144 F.3d 544, 546 (7th Cir. 1998).[1] However, a court necessarily abuses its discretion

---

[1] All courts that have considered the matter agree that an order lifting the automatic stay is a final judgment. *See* 1 Alan Resnick & Henry J. Sommer, Collier on Bankruptcy, § 5.08, at 5-

(continued...)

when its decision is based solely on an erroneous conclusion of law. *See United Air Lines, Inc. v. Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO,* 243 F.3d 349, 361 (7th Cir. 2001). When reviewing the bankruptcy judge's conclusions of law, this court applies a de novo standard. *See Meyer v. Rigdon,* 36 F.3d 1375, 1378 (7th Cir. 1994).

**B.**

Ms. Colon's home was sold at a foreclosure sale before she filed her Chapter 13 reorganization plan and, in that plan, proposed to redeem the home that already had been sold at the foreclosure sale. However, at the time of the bankruptcy filing, the Illinois state courts had not yet confirmed the sale of the property as required by the Illinois Mortgage Foreclosure Law. She therefore submits that the bankruptcy court should not have permitted the confirmation hearing on the judicial sale of her property once she filed her Chapter 13 plan. As the district court noted, this case turns on the relationship between 11 U.S.C. § 1322(c)(1) of the Bankruptcy Code and the Illinois Mortgage Foreclosure Law, *see* 735 ILCS 5/15-1508(b). We must determine whether, under § 1322(c)(1) of the United States Bankruptcy Code, a Chapter 13 plan may cure a default on a debtor's principal residence when the petition and plan were filed after the residence was

---

[1]  (...continued)
31-32 n.2 (15th ed. 2002) (noting holdings of 1st, 2nd, 3rd, 6th, and 11th Circuits). We have not directly addressed the issue. We see no reason to disagree with the other circuits. Foreclosure typically will follow close on the heels of lifting the stay. If the debtor were required to wait to appeal the judgment, the property would likely have been sold, leaving no relief for the debtor. *See id.* at 5-32.

sold at a foreclosure sale, but prior to confirmation of the sale in accordance with the Illinois Mortgage Foreclosure Law. Illinois bankruptcy and district courts have expressed disagreement on this issue.[2]

In resolving this issue, we must begin, as we do with any issue of statutory construction, with the wording of the statute. *See United States v. Balint*, 201 F.3d 928, 932 (7th Cir. 2000). If the wording of the statute is clear, that is the end of the matter. *See id.*; *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir. 1993). Section 1322(c)(1) of the Bankruptcy Code provides, "a default with respect to . . . a lien on the debtor's principal residence may be cured . . . until such residence is *sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law*." 11 U.S.C. § 1322(c)(1) (emphasis supplied). The Illinois Code states in pertinent part:

---

[2]  *Compare In re Crawford*, 217 B.R. 558, 560-61 (N.D. Ill. 1998) (concluding that under Illinois law a foreclosure sale is not complete until entry of the order confirming the sale, so the mortgagor may cure the arrearage until that point); *Christian v. Citibank, F.S.B.*, 214 B.R. 352, 355-56 (N.D. Ill. 1997) (same); *McEwen v. Fed. Nat'l Mortgage Ass'n*, 194 B.R. 594, 596-97 (N.D. Ill. 1996) (same); *In re Spencer*, 263 B.R. 227, 230-31 (Bankr. N.D. Ill. 2001) (same); *In re Jones*, 219 B.R. 1013, 1019 (Bankr. N.D. Ill. 1998) (same), *with Colon v. Option One Mortgage*, No. 02 C 1441, 2002 WL 1263986, at *2 (N.D. Ill. June 6, 2002) (finding that right to cure mortgage arrearage on principal residence ends at the time the highest bid is accepted by the selling officer); *In re Babington*, No. 00 C 7555, 2000 U.S. Dist. LEXIS 20840, at *2 (N.D. Ill. Dec. 12, 2000) (same); *In re Danaskos*, 254 B.R. 416, 442 (Bankr. N.D. Ill. 2000) (same); *In re Crawford*, 215 B.R. 990, 997 (Bankr. N.D. Ill. 1998) (same), *rev'd*, 217 B.R. at 560-61; *In re Christian*, 199 B.R. 382, 388-89 (Bankr. N.D. Ill. 1996) (same), *rev'd*, *Christian*, 214 B.R. at 355-56.

> [T]he court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice required in accordance with subsection (c) of Section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) that justice was otherwise not done, the court shall then enter an order confirming the sale.

735 ILCS 5/15-1508(b).

The parties dispute whether § 1322(c)(1)'s reference to a "foreclosure sale that is conducted *in accordance with applicable nonbankruptcy law*" terminates the debtor's right to cure the default at the close of the auction or whether that right continues until the state court confirms the sale. 11 U.S.C. § 1322(c)(1) (emphasis supplied).

### 1. Plain Wording

Not surprisingly, each side submits that its view is supported by the plain language of § 1322(c)(1). Option One notes that § 1322 employs the word "sale" rather than "completion of the sale," "confirmation of the sale," or "transfer of the deed." *See* Appellee's Br. at 8-9. It further emphasizes that the same provision speaks in terms of the sale being "conducted" rather than "completed." *Id.*; *see also In re Danaskos*, 254 B.R. 416, 419 (N.D. Ill. 2000) (distinguishing between conduct of sale itself and confirmation hearing).

Other language of the provision must also be taken into account and arguably supports Ms. Colon. The statutory provision refers to a sale "conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. § 1322(c)(1). Although this provision may be read as simply addressing the manner in which the sheriff's sale is to be conducted,

it also may be read as permitting state law to define the point at which the forfeiture sale ought to be considered complete. Although the latter reading of the statute seems most plausible, we think that the statute is sufficiently ambiguous to permit us to consult, albeit with great caution, the existing legislative history.

### 2. Legislative History

There does not appear to be much debate about the immediate impetus for the current version of the provision. As noted in *In re Crawford*, 217 B.R. 558, 559 (N.D. Ill. 1998), the immediate situation that led to the enactment of § 1322(c)(1) was Congress' desire to overturn the Third Circuit's holding in *In re Roach*, 824 F.2d 1370 (3d Cir. 1987). In that case, the Third Circuit had held that "the right to cure a default on a home mortgage . . . does not extend beyond the entry of a foreclosure judgment." *Roach*, 824 F.2d at 1379. This immediate objective does not reveal necessarily the entire scope of the task that Congress intended this provision to accomplish.

In *Crawford*, the court concluded that the statutory reference to "applicable nonbankruptcy law" clearly indicates that Congress was not attempting to create a nationwide federal rule, but to leave substantive mortgage foreclosure law in the hands of the states. *Id.* at 559 n.2. Other district courts considering this issue have followed the same path and therefore looked to state law to determine the contours of the debtor's right to redeem.[3] Our own

---

[3] *See, e.g., Christian*, 214 B.R. at 354-55 (citing Illinois cases for proposition that "sale of foreclosed property is not complete until the court enters an order confirming the sale" (citations (continued...)

reading of the Bankruptcy Code confirms that Congress wanted to leave to the states the right to fix the outer limits of the right to redeem. The legislative history of the 1994 Bankruptcy Reform Act indicates that § 1322(c)(1) is designed to:

> Allow[] the debtor to cure home mortgage defaults *at least* through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.

140 Cong. Rec. H10,769 (daily ed. Oct. 4, 1994) (remarks of Rep. Jack Brooks) (emphasis supplied), *reprinted in* Vol. E, Alan Resnick & Henry J. Sommer, Collier on Bankruptcy, App. Pt. 9(b), at 92 (15th ed. 2002)*; see also* 5 William L. Norton, Jr., Norton Bankruptcy Law & Practice § 121:6, at 121-81 (2d ed. 1997) (finding this legislative history persuasive and concluding that § 1322(c)(1) "assures that . . . [redemption] rights are cut of[f] [sic] no earlier than the foreclosure sale date"); *Christian,* 214 B.R. at 355 (citing this legislative history as persuasive).[4]

---

[3] (...continued) omitted)); *McEwen v. Fed. Nat'l Mortgage Ass'n,* 194 B.R. 594, 596 (N.D. Ill. 1996) (concluding that, rather than focusing on rights of parties or other bankruptcy court decisions, bankruptcy court should have focused "upon what it means to conduct a foreclosure sale in accordance with Illinois law," namely "foreclosure sale has not been conducted until the judicial sale has been confirmed by the court").

[4] Another portion of the legislative history is less supportive but not necessarily incompatible. It notes that "[t]here may be

(continued...)

We also note that there is significant scholarly support for the view that the states have the last word in determining the scope of the right of redemption:

> The statutory language and legislative history thus leave to state law the question of when a foreclosure sale has been completed. In some states, a sale may not be deemed completed until the court has entered an order confirming the sale . . . . It may well be significant that Congress did not say that the debtor may cure "until the sale" or "until the date of the foreclosure sale," indicating that the completion of the sale might be on a later date than the date of the auction. . . . The statutory language does not state that the debtor may cure if and only if there has not been a foreclosure sale, nor does it state that the debtor may not cure after such a sale if state law permits a cure. It was not the intent of Congress to cut off cure rights which debtors had previously enjoyed.

8 Resnick & Sommer, Collier on Bankruptcy § 1322.15, at 1322-51.

We must conclude that the legislative history, although not entirely conclusive, lends significant support to the view that Congress intended to extend the right to cure at least up to the date of the foreclosure sale. There is also significant evidence that Congress intended that

---

[4] (...continued)
several months between the court order and the foreclosure sale. Section [1322(c)(1)] will preempt conflicting State laws, and permit homeowners to present a plan to pay off their mortgage debt until the foreclosure sale *actually occurs*." 140 Cong. Rec. S14462 (1994) (comment of Senator Grassley) (emphasis supplied), as cited in *Crawford,* 215 B.R. at 996.

the states were to have the last word in setting the outer limits of the right to redeem. Therefore, to determine the scope of the right to cure a mortgage default, we must turn to the applicable state law.

## C.

The most direct statement on the Illinois Mortgage Foreclosure Law's confirmation provision is found in *Citicorp Savings of Illinois v. First Chicago Trust Co. of Illinois*, 645 N.E.2d 1038 (Ill. App. Ct. 1995). In *Citicorp*, the court concluded that "[i]n Illinois it is clear that a judicial sale is not complete until it has been approved by the trial court." *Id.* at 1045. The court further noted that "[t]he highest bid received by a sheriff at a judicial sale is merely an irrevocable offer to purchase the property and acceptance of the offer takes place when the court confirms the sale . . . . Until the court confirms the sheriff's proceedings, there is not a true sale in the legal sense." *Id.* Later Illinois appellate decisions similarly adopt this position.[5] We note, however, that these decisions were

---

[5] *See Commercial Credit Loans, Inc. v. Espinoza*, 689 N.E.2d 282, 285 (Ill. App. Ct. 1997) (relying on *Citicorp* and noting that the high bid at a judicial sale is a mere irrevocable offer, accepted on confirmation by the court); *Fleet Mortgage Corp. v. Deale*, 678 N.E.2d 35, 37 (Ill. App. Ct. 1997) (citing *Citicorp* for proposition that there is no true sale until confirmation). *See also Plaza Bank v. Kappel*, No. 1-01-2854, 2002 WL 31427407, at *4 (Ill. App. Ct. Oct. 28, 2002) ("It is well-settled in Illinois that a judicial foreclosure sale is not complete until it has been approved by the trial court." (citing *Commercial Credit*, 689 N.E.2d at 285)); *Grubert v. Cosmopolitan Nat'l Bank of Chi.*, 645 N.E.2d 560, 563 (Ill. App. Ct. 1995) ("A foreclosure sale is not final until it is confirmed,
(continued...)

rendered in the context of analyzing the statutorily prescribed situations that require the denial of confirmation of the foreclosure sale.[6] Although these decisions are helpful in determining the scope of the right of redemption in Illinois, we must search a bit further to determine definitively whether the right of redemption extends to the judicial confirmation of the sale and, if so, the nature of that extension.

By considering the entire Illinois statutory scheme, we may more accurately characterize the relationship between that scheme and the bankruptcy provision. In Illinois, a mortgagor has ninety days to reinstate a mortgage from the time of the service of the summons or of otherwise submitting to the court's jurisdiction. *See* 735 ILCS 5/15-1602. "The court may enter a judgment of foreclosure prior to the expiration of the reinstatement period, subject to the right of the mortgagor to reinstate the mortgage. . . ." *Id.* Reinstatement leaves the mortgage documents in place as if no default or acceleration had occurred. *Id.*

---

[5] (...continued)
an action which rests within the circuit court's discretion." (citation omitted)).

[6] *See Plaza Bank*, 2002 WL 31427407, at *2 (evaluating whether confirmation of sale should be reversed for lack of prosecution); *Espinoza*, 689 N.E.2d at 285 (finding unconscionable terms); *Fleet Mortgage Corp.*, 678 N.E.2d at 38 (finding negligent failure to cancel sale after debtor agreed to redeem, therefore refusal to confirm sale was correct); *Citicorp*, 645 N.E.2d at 1045 (refusing to confirm because of mistake); *Grubert*, 645 N.E.2d at 563 (evaluating scope of trial court's authority to confirm revision of purchase price).

Illinois law also provides for both equitable and statutory rights of redemption. The equitable right of redemption arises at the time of default and lasts until the foreclosure sale, after which the mortgagor may only redeem his property under the redemptive rights provided by statute. *See* 16 Ill. Jur., Property § 19:73, at 83 (1994).[7] The statutory right of redemption for residential real estate is seven months from i) the date of service or submission to the court's jurisdiction or ii) three months from the date of entry of a judgment of foreclosure. *See* 735 ILCS 5/15-1603(b)(1).

Whether a homeowner has redemption rights after the sheriff's sale therefore depends upon the date of the sale. "If the property is sold before the redemption period ends, the purchaser takes the property subject to the possibility of redemption, but the mortgagor can convey the right to redeem by quitclaim deed before the expiration of the redemption period." 16 Ill. Jur., Property § 19:73, at 84. The situation of redemption rights existing after a sale should not occur often because 735 ILCS 5/15-1507(b) provides that a judicial sale shall be held upon expiration of all statutory redemption rights. Given this language, it is likely that, in most cases, the mortgagor's statutory right to redeem or reinstate will expire before the foreclosure sale occurs.

---

[7] *See First Illinois Nat'l Bank v. Hans*, 493 N.E.2d 1171, 1174 (7th Cir. 1986) ("Inherent in every mortgage . . . is an equitable right of redemption. . . . The equitable right of redemption arises at the time of default and generally lasts until such time as there is a foreclosure sale, after which the mortgagor can only redeem his property under the redemptive rights provided by statute. In other words, once the foreclosure sale occurs, the equitable right of redemption ends.").

If a statutory right to redeem has expired and a court has refused to permit equitable redemption, under Illinois law the mortgagor normally will have lost the right to redeem before the sale. However, because § 1322(c)(1) of the Bankruptcy Code provides a statutorily protected right to cure at least until the foreclosure sale, the Bankruptcy Code gives the debtor more protection than Illinois requires.

If a sale is not confirmed because the state court determines that one of the four statutory impediments to confirmation is present, the operation of § 1322(c)(1) of the Bankruptcy Code, and the possibility of equitable redemption again would be operative. But these rights of redemption after the completion of the initial sale are entirely contingent on the state court's disapproval of the initial sale.[8]

**D.**

The foregoing discussion permits the following resolution of the issue before us. Section 1322(c)(1) of the Bankruptcy Code states that a default on a mortgage lien "may be cured . . . until such residence is *sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.*" 11 U.S.C. § 1322(c)(1) (emphasis supplied). The statute's wording and its legislative history both indicate an intent to set the limit on the right to cure no earlier than

---

[8] *See Van Fleet v. Van Fleet,* 467 N.E.2d 592, 595 (Ill. App. Ct. 1984) (indicating that the "title of the holder of the right to redeem is a fee title. If a deed is never issued to the holder of the certificate of sale, the title remains in the holder of the right to redeem and does not revest in him. The holder of the right to redeem never loses title until the deed actually issues.").

the date of the judicial sale. This was Congress' response to *In re Roach.* However, the provision's reference to "applicable nonbankruptcy law" requires deference to state mortgage law on the scope of any right to cure after the sale. After our study of Illinois foreclosure law, we cannot conclude that the convergence of § 1322(c) and Illinois foreclosure law provides anything like an absolute right to cure a default up until the time of the confirmation hearing. In this context, neither the wording nor the legislative history provides support for reading § 1322(c) as creating a more expansive right to cure than that which the Illinois Code provides. Indeed, it is clear that any right to cure after the time of the sale would have to be found in the state foreclosure law. The Bankruptcy Code is most logically read in this context to permit cure to the extent that Illinois law does.

Under state law, after the completion of the judicial sale, assuming that the redemption period has run, the purchaser at that sale has a presumptive right to eventual ownership of the property, a right contingent on the highly circumscribed authority of the state court to void the sale on any of the four grounds set forth in the statute. Although the Illinois courts have employed language that, read alone, might suggest that the judicial sale does not actually occur until confirmation, these cases must be read in the context of the entire statutory scheme that requires confirmation, unless one of four statutory exceptions apply. To read the Illinois courts' statements that the sale does not "legally" occur until the confirmation out of context creates a right to cure up until the time of confirmation that simply is unavailable under the state statutory scheme and, indeed, that would frustrate the operation of that scheme. The appropriate reading of this precedent is that, once a judicial sale takes place, a potentially binding contract exists that may not be enforced until confirmed by the court.

## E.

Ms. Colon attempted to redeem her residential property after the judicial sale. Because Ms. Colon had no right to redeem the residence at the time she filed her plan under Chapter 13, the bankruptcy court certainly did not abuse its discretion in determining that the automatic stay should be lifted and the state court permitted to determine whether the foreclosure sale conducted prior to the filing of the Chapter 13 petition suffered from any of the statutory infirmities that would render it void. If the state court determines that the sale was valid, the sale will be final, and Ms. Colon will have been deprived of no right under either the Bankruptcy Code or Illinois law. If the sale is void, she will have the rights under the Code and state law of a debtor whose property has not yet undergone a judicial sale.

## Conclusion

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*