**In re William J. WISOTZKE, Jr., Debtor.**

No. 08–21178.

United States Bankruptcy Court, W.D. New York.

Aug. 14, 2008.

Peter D. Grubea, Buffalo, NY, for debtor.

Jason S. DiPonzio, Rochester, NY, for creditor.

George M. Reiber, Rochester, NY, trustee.

## DECISION & ORDER

JOHN C. NINFO, II, Bankruptcy Judge.

### BACKGROUND

On May 14, 2008, William J. Wisotzke, Jr. (the "Debtor") filed a petition initiating a Chapter 13 case. The Schedules and Statements required to be filed by Section 521 and Rule 1007, and a Chapter 13 Plan (the "Plan") filed by the Debtor, indicated that: (1) the Debtor resided at 8500 Sherbrooke Street, Honeoye, New York (the "Sherbrooke Property"), which was titled to his deceased parents, William J. Wisotzke and Ruth M. Wisotzke; (2) the Debtor was the sole beneficiary under his

parents' wills; (3) the Property had a current value of $74,600.00; and (4) there were secured real property tax liens against the Property totaling $10,751.42, in favor of Ontario County, the Town of Richmond and HLPA, Inc.

The Debtor's Plan proposed to pay: (1) $181.00 biweekly to the Chapter 13 Trustee (the "Trustee") for sixty months; and (2) the delinquent real property taxes with the required statutory interest over the term of the Plan.

On May 16, 2008, Ontario County filed a motion (the "Ontario County Motion"), which requested that the Court determine that the Sherbrooke Property was not Section 541 [1] property of the estate. The Ontario County Motion asserted that: (1) in October 2007, Ontario County commenced an *in rem* tax foreclosure proceeding (the "Tax Proceeding") to collect the delinquent real property taxes due on the Property, pursuant to Article 11 of the New York Real Property Tax Law (the "RPTL"); (2) the County was now aware that William J. Wisotzke and Ruth M. Wisotzke were deceased, and that the Property was being occupied by the Debtor; (3) some of the notices required to be sent by the County in the Proceeding were sent by certified mail and signed for by the Debtor on October 2, 2007; (4) no answer was interposed in the Proceeding in connection with the Property and the Property was not redeemed before January 18, 2008, the last day to redeem, as set forth in the notice required by RPTL § 1124; and (5) on February 29, 2008, the Ontario County Court entered a default judgment (the "Default Judgment"), pursuant to RPTL § 1131 [2], which: (a) confirmed that the Property had not been redeemed before the expiration of the period of redemption; (b) confirmed that no answer had been interposed in the Proceeding in connection with the Property; (c) confirmed that all the proceedings taken by the County in the Proceeding were in compliance with the requirements of Article 11 of the RPTL; (d) awarded possession of the Property to the County; (e) ordered that the County "shall receive possession and title to the [Property] pursuant to this Judgment"; (f) authorized [3] the Ontario

1. Section 541(a)(1) provides that:

   (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
   (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
   11 U.S.C. § 541 (2008).

2. New York Real Property Tax Law § 1131—Default Judgment—provides that:

   In the event of a failure to redeem or answer by any person having the right to redeem or answer, such persona shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest and a judgment in foreclosure may be taken by default as provided by subdivision three of section eleven hundred

thirty-six of this title. A motion to reopen any such default may not be brought later than one month after entry of the judgment. New York Real Property Tax Law § 1131 (2008).

3. New York Real Property Tax Law § 1136 provides, in part, that:

   6. The court shall make a final judgment awarding to such tax district the possession of any parcel of real property described in the list of delinquent taxes not redeemed as provided in this title and as to which no answer is interposed as provided herein. In addition thereto such judgment shall contain a direction to the enforcing officer of the tax district to prepare, execute and cause to be recorded a deed conveying to such tax district full and complete title to such parcel. Upon the execution of such deed, the tax district shall be seized of an estate in fee simple absolute in such parcel and all persons, including the state, infants,

County Treasurer to prepare, execute and cause to be recorded a deed conveying the Property to the County; and (g) indicated that, upon the execution and recording of the authorized deed, the County would be seized of an estate in fee simple absolute in the Property, and all persons, including the People of the State of New York, infants, incompetents, absentees and non-residents, who may have had any right, title, interest, claim, lien or equity of redemption, in or to the Property would be forever barred and foreclosed.

On May 19, 2008, the Debtor interposed "Opposition" to the Ontario County Motion, which asserted that: (1) on May 14, 2008, the County conducted an auction (the "Auction Sale") of the various properties that were the subject of the Tax Proceeding, including the Sherbrooke Property [4]; (2) the County received a bid of $66,000.00 for the Property; (3) in its 2000 Decision & Order in *In re Thomas* (Case No. 00–21422) ("*Thomas*"), this Court determined that the debtor's property was not property of the estate after Steuben County, New York had proceeded under Article 11, but had taken and recorded the deed provided for in RPTL § 1136(6), because the debtor did not have a legally recognizable or enforceable right of redemption at the time of the filing of her petition; (4) notwithstanding *Thomas*, in its 2003 Decision & Order this Court, as affirmed in *In re Rodgers*, 333 F.3d 64 (2d Cir.2003) ("*Rodgers*"), determined that, even though the debtor's right of redemption in an *in rem* tax foreclosure proceeding conducted by Monroe County, New York expired prior to the auction sale conducted by Monroe County, it was when the property was struck down at the auction sale, which was conducted before the filing of the petition, that terminated all of the debtor's interest in the property in question, so that the property was not property of the estate; (5) since the Debtor filed his petition prior to the Auction Sale, which was conducted later in the day on May 14, 2008, the Property was Section 541 property of the estate and, pursuant to the provisions of Section 1322(c)(1) of the Bankruptcy Code,[5] his time to cure his default in the payment of the real property taxes due to

incompetents, absentees and non-residence who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption.
New York Real Property Law § 1136 (2008).
The Default Judgment specifically authorized the preparation, execution and recording of a deed, but it did not contain the "direction" required by § 1136(6).

4. It appears that RPTL § 1166 authorizes the taxing authority, when it has become "vested with title" to foreclosed property, to resell foreclosed property either at public auction or by private sale.

New York Real Property Tax Law § 1166 provides that:
1. Whenever any tax district shall become vested with the title to real property by virtue of a foreclosure proceeding brought pursuant to the provisions of this article, such tax district is hereby authorized to sell and convey the real property so acquired, either with or without advertising for bids, notwithstanding the provisions of any general, special or local law.
2. No such sale shall be effective unless and until such sale shall have been approved and confirmed by a majority vote of the governing body of the tax district.
New York Real Property Tax Law § 1166 (2008).

5. Section 1322(c)(1) provides that:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]
11 U.S.C. § 1322 (2008).

Ontario County and the other taxing authorities was extended to the time of the Auction Sale, and that cure could be effectuated by the Plan; (6) the Auction Sale, conducted by the County subsequent to the filing of the Debtor's petition, was void, because it was in violation of the automatic stay provided for by Section 362 of the Bankruptcy Code; and (7) even if the Court were to determine that the Sherbrooke Property was not Section 541 property of the estate as of the date of the filing of his petition, because the Property had been "transferred" to the County prior to the filing of the petition as part of the Tax Proceeding, that transfer that occurred within two years prior to the filing of the petition, was an avoidable fraudulent transfer under Section 548 of the Bankruptcy Code,[6] since the Debtor did not receive a reasonably equivalent value for the Property and the Debtor's creditors were deprived of the significant value of the Property over and above the delinquent real property taxes due, as clearly demonstrated by the price obtained for the Property at the Auction Sale.

On June 2, 2008, Ontario County filed a "Reply" to the Opposition, which asserted that: (1) the *in rem* tax foreclosure proceeding conducted by Monroe County in *Rodgers* was conducted pursuant to the Monroe County *In Rem* Tax Foreclosure Act, not Article 11 of the RPTL, so that the judgment of foreclosure entered in that proceeding: (a) was not pursuant to RPTL § 1131; and (b) did not award possession and title to Monroe County; and (2) under Article 11 of the RPTL, any

right of redemption that the Debtor may have had in the Sherbrooke Property terminated on January 18, 2008, as confirmed by the Default Judgment.

On the June 4, 2008 initial hearing on the Ontario County Motion (the "Initial Hearing"), the Court made the following rulings:

1. Consistent with a prior oral ruling in an unrelated Chapter 11 case involving other property included in the same Tax Proceeding that was commercial property, not a debtor's residence, the Court ruled that any legal or equitable interest that the Debtor may have had in the Sherbrooke Property terminated, at the latest, thirty days after the entry of the Default Judgment when the Debtor had no right to even move to vacate the Default Judgment, which Judgment confirmed the termination of any and all interests the Debtor may have had in the Property and awarded possession and ownership of the Property to Ontario County;

2. Treating the Reply in part as a cross-motion for a determination that Ontario County had violated the Section 362 automatic stay by conducting the Auction Sale post-petition, that matter was moot because of the Court's ruling that the Sherbrooke Property was not Section 541 property of the estate at the time of the filing of the Debtor's petition;

3. Whether the transfer to Ontario County of possession and ownership

---

**6.** Section 548(a)(1)(B)(i) provides that:

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by

the debtor, that was made incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(B)(i) received less that a reasonably equivalent value in exchange for such transfer or obligation[.]
11 U.S.C. § 548 (2008).

to the Sherbrooke Property as part of the Tax Proceeding was an avoidable fraudulent transfer pursuant to Section 548, that issue was not properly before the Court, because it required the commencement of an adversary proceeding. However, the Court believed that there was substantial merit to the Debtor's argument, assuming that the Debtor had an ownership interest in the Property at the time of the transfer,[7] in view of the following:

a. As a part of the Tax Proceeding, the Sherbrooke Property was forfeited to Ontario County, which became vested with title, but the Property was never exposed to the market by an advertised public sale, as was the case in the *in rem* tax foreclosure proceeding in *Rodgers,* and as is the case in a regularly conducted mortgage foreclosure proceeding in New York State, a factor determined to be critical by the U.S. Supreme Court in *BFP v. Resolution Trust,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994);

b. Also missing from an *in rem* tax foreclosure proceeding pursuant to Article 11 of the RPTL proceeding is any surplus money proceeding; and

c. The price obtained by Ontario County at the Auction Sale [8]: (i) clearly demonstrated that the Debtor's creditors, in existence at the time of the Tax Proceeding and the Default Judgment, were deprived of substantial value in the Sherbrooke Property; and (ii) indicated that the County received a substantial windfall when it received possession and title to the Property in full satisfaction of approximately $11,000.00 of unpaid taxes, and then almost immediately resold the valuable Property for $66,000.00;

4. Regarding the Debtor's assertion that he had cure rights under Section 1322(c)(1), since the Auction Sale was a resale of the Sherbrooke Property by Ontario County, as authorized and contemplated by RPTL § 1166 and RPTL Article 11, it was not a "foreclosure sale," as required by the judgment of foreclosure in *Rodgers,* or as described in and contemplated by Section 1322(c)(1); and

5. In the event that the Debtor elected to appeal this Court's oral ruling on the Ontario County Motion, that the Sherbrooke Property was not Section 541 property of the estate, the Court would file a written decision expanding upon its ruling.

The Debtor and the Trustee objected to a proposed order submitted by Ontario County on its Motion, and a June 9, 2008 letter from the attorney for the Debtor: (1) indicated that the Debtor had decided to appeal the Court's rulings placed on the record at the Initial Hearing; and (2) requested that the Ontario County Motion

---

**7.** At the Initial Hearing, the Court raised the issue of the Debtor's ownership interest in the Sherbrooke Property. However, it was not necessary for the Court to determine whether the Debtor had any ownership interest in order to decide the Ontario County Motion, since there was no dispute that he was bound by the Tax Proceeding and the Default Judgment.

**8.** As specifically provided for by RPTL § 1166, the Auction Sale could only have been conducted by Ontario County after the tax district "became vested with the title." As a result, the Auction Sale was a resale.

be restored to the Court's calendar so that the Debtor's arguments, especially with respect to Section 1322(c)(1), could be placed on the record in more detail.

The Court indicated that it would not sign the proposed order and would re-calendar the Ontario County Motion for an additional oral argument on July 16, 2008 (the "Supplemental Hearing"), and then file a written decision.

On July 11, 2008, Donald Brault ("Brault"), the successful bidder for the Sherbrooke Property at the Auction Sale, interposed a submission in connection with the Ontario County Motion and the Supplemental Hearing, which asserted that: (1) the closing between Brault and Ontario County had not yet occurred; (2) as raised by the Court at the Initial Hearing, it remained unclear as to whether the Debtor at any time between the commencement of the Tax Proceeding and the filing of his petition was the legal owner of the Property, as opposed to the estate of one or more of his deceased parents; (3) notwithstanding the ownership issue, it was clear that the Debtor was bound by the results of the Tax Proceeding and the Default Judgment; (4) with regard to a potential avoidable fraudulent transfer action under Section 548: (a) the issue of the extent of the Debtor's ownership interest in the Property was critical; (b) if successful, the Trustee could only recover an amount necessary to pay the Debtor's creditors in existence at the time of any avoidable fraudulent transfer, if there were any such creditors in existence, together with any administrative expenses; (c) only the Trustee had standing to bring any avoidable fraudulent transfer action; and (d) there were strong public policy considerations regarding *in rem* tax foreclosure proceedings that the Court would have to take into account in connection with any avoidable fraudulent transfer ac-

tion that might be commenced; and (5) the Debtor's Plan should be dismissed because it was not feasible or confirmable.

On July 15, 2008, the Debtor interposed an additional submission, which asserted that: (1) Section 1322(c)(1) provided a federal right of redemption which extended any applicable nonbankruptcy law right of redemption to and through a foreclosure sale; (2) the Court should determine, for the purposes of Section 1322(c)(1), that the "foreclosure sale" in the Tax Proceeding conducted by Ontario County was not the last day to redeem on January 18, 2008, nor the entry of the Default Judgment, but it was the date of the execution of the deed authorized by the Default Judgment, but required by RPTL § 1136(6), since only then would the County be "seized" of an estate in fee simple in the Sherbrooke Property; (3) the execution of the deed, as required by RPTL § 1136(6), was not a ministerial act, but was necessary to finally terminate any right the Debtor, or any other taxpayer, might have in property included in an *in rem* tax foreclosure proceeding conducted pursuant to RPTL Article 11; (4) in the alternative, the Court should determine that the Auction Sale is the "foreclosure sale" for purposes of Section 1322(c)(1), because the determination by the County not to prepare and execute a deed and take title, as required by RPTL § 1136(6), but rather to sell the parcels included in the Proceeding at the Auction Sale, was, by course of conduct, applicable non-bankruptcy law for purposes of Section 1322(c)(1); (5) the Trustee might have some additional avoidance rights under Section 544 of the Bankruptcy Code; (6) regarding the Debtor's ownership interest in the Sherbrooke Property: (a) the Debtor's mother was the last of his parents to decease; (b) a copy of his mother's will filed with the Court demonstrated that the Debtor was her sole beneficiary; and (c) documentation filed with

the Court indicated that the Debtor was appointed as the fiduciary of his mother's estate in 2006; (7) the Debtor's Plan, based in part upon the assumption that a claimed exemption in the Property would be allowed, was confirmable and feasible; and (8) Brault's arguments with regard to any avoidable fraudulent transfer action were premature.

Brault filed an additional submission dealing with the question of the Debtor's claimed homestead exemption and his ownership interest in the Property.

On July 16, 2008, the parties made further oral arguments in connection with the Ontario County Motion, and the Court reserved decision.

The Debtor, Brault and Ontario County filed additional submissions after the Supplemental Hearing, which supplemented the arguments they had made in their prior written submissions and at oral argument at the Initial and Supplemental Hearings.

## DISCUSSION

Based upon all of the facts and circumstances and pleadings and proceedings in the Debtor's Chapter 13 case to date, this Court makes the following findings and rulings:

1. Nothing in this Decision & Order is intended to in any way limit the rights, if any, of the Trustee under Section 544, Section 548 or Section 549 of the Bankruptcy Code, or under any other provision of the Bankruptcy Code or non-bankruptcy law. This Decision & Order is intended only to address the Ontario County Motion and determine whether the Sherbrooke Property was Section 541 property of the bankruptcy estate at the time of the filing of the Debtor's petition;

2. Nothing in this Decision & Order is intended to determine what, if any, actual legal or equitable ownership interests the Debtor may have had in the Sherbrooke Property from the date of the commencement of the Tax Proceeding, to the date of this Decision & Order, since, for purposes of the Ontario County Motion, none of the parties-in-interest appear to dispute that the Debtor was bound by the Proceeding and the Default Judgment;

3. At the time of the filing of the Debtor's petition, the Sherbrooke Property was not Section 541 property of the bankruptcy estate, because the Debtor's interest in the Property terminated, at the latest, thirty days after the entry of the Default Judgment,[9] since at that time possession and ownership of the Property had been transferred to Ontario County, and the Debtor no longer could even move under New York State law to vacate the Default Judgment, for the following reasons:

a. It is clear from all of the pleadings in the Ontario County Motion, that an *in rem* tax foreclosure proceeding under Article 11 of the RPTL, as conducted by Ontario County, consists of: (i) following the provisions of Article 11

---

9. As in *Thomas* and *Rodgers*, we take debtors as we find them. In this case, the thirty-day period within which a taxpayer can move to vacate the RPTL § 1131 default judgment had expired pre-petition. No doubt in the future a debtor will file within this thirty-day period.

At a minimum, the debtor would have to immediately file a motion in State Court to vacate the judgment and demonstrate to this Court that there was substantial merit to the motion.

of the RPTL up and through the submission of a default judgment pursuant to RPTL § 1131; (ii) electing ultimately to take advantage of the auction sale resale option provided for by RPTL § 1166; (iii) submitting a default judgment that does not fully comply with the provisions of RPTL § 1136(6), because even though it awards possession and title of the foreclosed property to the County, it does not contain the required direction that the County Treasurer prepare, execute and record a deed of the foreclosed property; and (iv) the default judgment is knowingly entered by the County Court even though it only provides an authorization for the County Treasurer to prepare, execute and record a deed[10]; and

b. notwithstanding the above-described authorization versus direction digression by the County and the Ontario County Court from the specific provisions of RPTL § 1136(6),[11] this Court finds that the Default Judgment constituted the transfer of possession and ownership of the Sherbrooke Property to the County, with the subsequent preparation, execution and recording of a deed to the Sherbrooke Property by the County Treasurer being a mere ministerial act, and after thirty days there was no right to even move to vacate the Default Judgment;

4. In connection with Section 1322(c)(1) of the Bankruptcy Code, assuming that the Section even applies to *in rem* tax foreclosure[12] proceedings, this Court believes that in the *in rem* tax proceeding format conducted by Ontario County under Article 11 of the RPTL, the entry of the Default Judgment and the passage of thirty days constitutes the latest possible date of the "foreclosure sale" provided for in Section 1322(c)(1), as did the recording of the deed to Steuben County in *Thomas* and the property being struck down at the sale in *Rodgers*.[13] Since the execution of the deed was in this Court's view a mere ministerial act, possession and ownership having been transferred by the entry of the Default Judgment, this was the end of the line[14] for

10. The Court assumes that the County then conducts the auction sale and, thereafter, for chain of title purposes, prepares and executes the authorized deed and then executes a deed from the County to the purchaser at the auction sale.

11. Presumably this digression from RPTL § 1136(6) is based upon some cost-saving and/or other practical reason(s), such as not wanting to be liable for anything occurring on the premises of the foreclosed property, and the County Court is aware of the reasons for this digression.

12. Although the literal language of Section 1322(c)(1) may seem to apply, its legislative history indicates that it was clearly addressed to mortgage foreclosures.

13. The parties never fully argued the Section 1322(c)(1) issue in those cases.

14. "Congress clearly intended to extend the debtor's right to cure to the outer limits allowed under state law ... [but] the intent could not have included a desire to permit the debtor, through creative invocation of bankruptcy protection, to do an end-run around state law once all substantive events have come and gone."

*Colon v. Option One Mortgage Corp.,* 319 F.3d 912, 915 (7th Cir.2003) (*citing Colon v. Option*

the Debtor and the other taxpayers in the Tax Proceeding. The County Treasurer could have prepared, executed and recorded a deed to the Sherbrooke Property at any time after the entry of the Default Judgment, in its sole discretion and without any further proceedings or the involvement of the County Court. Consistent with this finding, the Auction Sale was not a "foreclosure sale," it was simply an RPTL § 1166 resale of the Property, possession and ownership of the Property having previously been transferred to the County by the entry of the Default Judgment and the passage of thirty days;

5. In the event that on appeal of this Decision & Order, or in any subsequent proceeding commenced in this case under Sections 544, 548 or 549 of the Bankruptcy Code, Ontario County takes the position that possession and ownership of the Sherbrooke Property was not transferred to the County by the entry of the Default Judgment and the passage of thirty days, but that a transfer of possession and ownership would only occur at some later point, for example, the Auction Sale or the actual preparation, execution and/or recording of a deed to the County, in connection with its resale at the Auction Sale or otherwise, thereby indicating that the preparation, execution and/or recording of the deed was not a mere ministerial act, this Court finds that, subject to a determination of what, if any, ownership

interest the Debtor may have actually had in the Sherbrooke Property: (a) the Property was Section 541 property of the estate at the time of the filing of the Debtor's petition; (b) the Debtor may have had the right under Section 1322(c)(1) to cure his default in the payment of real property taxes,[15] since the preparation, execution and recording of the deed was not a mere ministerial act, but was necessary to the completion of the Tax Proceeding, and, therefore, the end of the line in the Proceeding, the execution or recording of a deed to the County, as specifically provided for in RPTL § 1136(6), may constitute the "foreclosure sale" contemplated by Section 1322(c)(1) of the Bankruptcy Code.

### CONCLUSION

Subject to the alternative findings in this Decision & Order, the Ontario County Motion is in all respects granted.

**IT IS SO ORDERED.**

---

*One Mortgage Corp.,* 2002 WL 1263986, 2002 U.S. Dist. LEXIS 10033 (N.D.Ill.2002)).

**15.** Again, assuming that Section 1322(c)(1) applies to *in rem* real estate tax foreclosure proceedings.